Exhibit A

MASTER MORTGAGE LOAN SALE AGREEMENT

by and between

UBS REAL ESTATE SECURITIES INC.

(Purchaser)

and

COUNTY TRUST MORTGAGE BANKERS CORP.

(Seller)

FIXED AND ADJUSTABLE RATE PRIME MORTGAGE LOANS

(SERVICING RELEASED)

as of January 30, 2005

[TPW: NYLEGAL:383003.3] 19356-00018 01/04/2005 08:23 PM

ARTICLE I DEFINITIONS..................................................................................................1

ARTICLE II PURCHASE AND SALE OF THE MORTGAGE LOANS.......................................9
    SECTION 2.1   PURCHASE AND SALE OF THE MORTGAGE LOANS..........................9
    SECTION 2.2   PURCHASE PRICE FOR MORTGAGE LOANS.................................9
    SECTION 2.3   PRICING; DELIVERY OF DOCUMENTS AND FUNDING OF MORTGAGE LOANS .....10
    SECTION 2.4   EXPENSES.....................................................................11
    SECTION 2.5   SERVICING OF THE MORTGAGE LOANS....................................11
    SECTION 2.6   NON-SOLICITATION BY SELLER............................................12
    SECTION 2.7   BOOKS AND RECORDS.........................................................12
    SECTION 2.8   POST CLOSING DELIVERY OF MORTGAGE LOAN DOCUMENTS; REPURCHASE ...13
    SECTION 2.9   CLOSING DOCUMENTS.........................................................14

ARTICLE III REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER CONCERNING MORTGAGE LOANS; REPURCHASE OF MORTGAGE LOANS.......................................15
    SECTION 3.1   INDIVIDUAL MORTGAGE LOANS............................................15
    SECTION 3.2   REPRESENTATIONS OF SELLER AS OF THE FUNDING DATE...............28
    SECTION 3.3   REPURCHASE AND SUBSTITUTION..........................................30

ARTICLE IV MISCELLANEOUS...........................................................................31
    SECTION 4.1   INDEMNITY...................................................................31
    SECTION 4.2   FURTHER ASSURANCES.........................................................32
    SECTION 4.3   SUCCESSORS AND ASSIGNS.....................................................32
    SECTION 4.4   SURVIVAL; ENTIRE AGREEMENT; SEVERABILITY.............................32
    SECTION 4.5   AMENDMENT; WAIVERS.........................................................33
    SECTION 4.6   COUNTERPARTS; HEADINGS.....................................................33
    SECTION 4.7   NOTICES AND WIRE INSTRUCTIONS.............................................33
    SECTION 4.8   GOVERNING LAW...................................................................34
    SECTION 4.9   RECONSTITUTION.................................................................34

i

[TPW:NYLEGAL:502003.3] 19356-00088 05/24/2005 08:23 PM

SECTION 4.10  AMENDMENTS TO THIS AGREEMENT ON UBS WEBSITE .................................35

SECTION 4.11  ELECTRONIC EXECUTION.................................................................................36

SECTION 4.12  FINANCIAL STATEMENTS ...............................................................................36

**EXHIBITS**

EXHIBIT A      DOCUMENTS REQUIRED FOR FUNDING

EXHIBIT B      FORM OF SELLER'S OFFICER'S CERTIFICATE

EXHIBIT C      FORM OF SECURITY RELEASE CERTIFICATION

EXHIBIT D      TEXT OF ASSIGNMENT AND CONVEYANCE

ii

<u>MORTGAGE LOAN SALE AGREEMENT</u>

This MASTER MORTGAGE LOAN SALE AGREEMENT ("Agreement"), dated as of January 30, 2005, is between COUNTY TRUST MORTGAGE BAKERS CORP., a Florida corporation ("Seller"), and UBS REAL ESTATE SECURITIES INC., a Delaware corporation ("Purchaser").

**WITNESSETH**

WHEREAS, pursuant to the terms of this Agreement and the UBS Website Program, Seller agrees to sell, and Purchaser agrees to purchase, from time to time certain first lien residential mortgage loans secured by one-to-four family residential property on a servicing-released basis (each a "Mortgage Loan"), on various dates as provided herein (each a "Funding Date");

WHEREAS, Purchaser and Seller wish to memorialize in writing certain agreements and conditions relating to the sale, delivery, and the servicing of the Mortgage Loans;

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**ARTICLE I**

**DEFINITIONS**

Whenever used herein, the following capitalized words and phrases, unless the context otherwise requires, shall have the following meanings:

<u>Adjustable Rate Mortgage Loan</u>: A Mortgage Loan purchased pursuant to this Agreement which provides for the adjustment of the Mortgage Interest Rate payable in respect thereto.

<u>Adjustment Date</u>: With respect to each Adjustable Rate Mortgage Loan, the date set forth in the related Mortgage Note on which the Mortgage Interest Rate on the Mortgage Loan is adjusted in accordance with the terms of the Mortgage Note.

<u>Agreement</u>: This Master Mortgage Loan Sale Agreement, including all exhibits and attachments hereto, and all amendments hereof and supplements hereto.

<u>ALTA</u>: The American Land Title Association or any successor.

<u>Appraised Value</u>: With respect to any Mortgage Loan, the value of the related Mortgaged Property based upon the appraisal made for the originator at the time of the

1

[TP#: NYLEGAL:325003.2] 19356-00068 01/24/2005 08:23 PM

origination of such Mortgage Loan or the sale price of such Mortgaged Property if the proceeds of such Mortgage Loan were used to purchase such Mortgaged Property, whichever is less.

Assignment of Mortgage:  An individual assignment of a Mortgage, notice of transfer, or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale of the Mortgage Loan to the assignee named therein.

Buydown Agreement:  An agreement between the Seller and a Mortgagor, or an agreement among the Seller, a Mortgagor and a seller of a Mortgaged Property or a third party with respect to a Mortgage Loan which provides for the application of Buydown Funds.

Buydown Funds:  In respect of any Buydown Loan, any amount contributed by the seller of a Mortgaged Property subject to a Buydown Loan, the buyer of such property, the Seller or any other source, plus interest earned thereon, in order to enable the Mortgagor to reduce the payments required to be made from the Mortgagor's funds in the early years of a Mortgage Loan.

Buydown Loan:  Any Mortgage Loan in respect of which, pursuant to a Buydown Agreement, (i) the Mortgagor pays less than the full monthly payments specified in the Mortgage Note for a specified period and (ii) the difference between the payments required under such Buydown Agreement and the Mortgage Note is provided from Buydown Funds.

Business Day:  Any day other than (i) a Saturday or Sunday or (ii) a day on which banking or savings and loan institutions in the states in which the parties conduct business or the State of New York are authorized or obligated by law or executive order to be closed.

Convertible Mortgage Loan:  Any Adjustable Rate Mortgage Loan purchased pursuant to this Agreement as to which the related Mortgage Note permits the Mortgagor to convert the Mortgage Interest Rate on such Mortgage Loan to a fixed Mortgage Interest Rate.

Co-op Lease:  With respect to a Co-op Loan, the lease with respect to a dwelling unit occupied by the Mortgagor and relating to the stock allocated to the related dwelling unit.

Co-op Loan:  A Mortgage Loan secured by the pledge of stock allocated to a dwelling unit in a residential cooperative housing corporation and a collateral assignment of the related Co-op Lease.

Co-op Stock:  With respect to a Co-op Loan, the single outstanding class of stock, partnership interest or other ownership instrument in the related residential cooperative housing corporation.

Cut-off Date:  With respect to each Mortgage Loan, the date on which the balances are reconciled for purchase, or such other date as may be mutually agreed by Purchaser and Seller.

2

[TPW:NYLEGAL:303003.2] 19326-00048 01/24/2005 06:23 PM

Due Date: With respect to any Mortgage Loan, the day of the month on which Monthly Payments on such Mortgage Loan are due, exclusive of any days of grace.

Electronically: As it applies to any record, communication, data, signature, including but not limited to any manifestation of assent, such as "clicking" on an on-screen icon, word or graphic, shall mean any digital, analog, optical or magnetic means, method, or process now known or hereafter developed, used to evidence such item or event.

Fannie Mae Guides: The Fannie Mae Selling Guide and the Fannie Mae Servicing Guide and all amendments or additions thereto.

Fannie Mae: Fannie Mae (formerly known as the Federal National Mortgage Association) or any successor.

Freddie Mac: Freddie Mac (also known as the Federal Home Loan Mortgage Corporation) or any successor.

Freddie Mac Guide: The Freddie Mac Single-Family Seller/Servicer Guide and all amendments or additions thereto.

Funding Date: The date or dates, set forth in the related Confirmation, on which, from time to time the Purchaser shall purchase and the Seller shall sell a Mortgage Loan or Mortgage Loans.

Gross Margin: With respect to any Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note and the UBS Website that is added to the Index on each Adjustment Date in accordance with the terms of the related Mortgage Note to determine the new Mortgage Interest Rate for such Mortgage Loan.

HUD: The United States Department of Housing and Urban Development or any successor thereto.

Index: With respect to any Adjustable Rate Mortgage Loan, the index identified on the UBS Website and set forth in the related Mortgage Note for the purpose of calculating the Mortgage Interest Rate thereon.

Initial Rate Cap: With respect to each Adjustable Rate Mortgage Loan and the initial Adjustment Date therefor, a number of percentage points per annum that is set forth in the UBS Website and in the related Mortgage Note, which is the maximum amount by which the Mortgage Interest Rate for such Adjustable Rate Mortgage Loan may increase or decrease from the Mortgage Interest Rate in effect immediately prior to such Adjustment Date.

Loan-to-Value Ratio: With respect to any Mortgage Loan, the original principal balance of such Mortgage Loan divided by the Appraised Value of the related Mortgaged Property.

3

[TP90:NYLEGAL:387008.7] 19356-00088 01/24/2025 08:23 PM

Maximum Mortgage Interest Rate:  With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth on the UBS Website and in the related Mortgage Note and is the maximum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be increased on any Adjustment Date.

MERS:  Mortgage Electronic Registration Systems, Inc., a subsidiary of MERSCORP, Inc.

MERS System:  The electronic mortgage registration system maintained by MERS.

MIN:  The Mortgage Identification Number of Mortgage Loans registered with MERS on the MERS System.

Minimum Mortgage Interest Rate:  With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth on the UBS Website and in the related Mortgage Note and is the minimum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be decreased on any Adjustment Date.

MOM Loan:  A Mortgage Loan with respect to which MERS is acting as mortgagee of record of such Mortgage Loan solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

Monthly Payment:  The scheduled monthly payment of principal and interest on a Mortgage Loan which is payable by a Mortgagor under the related Mortgage Note on each Due Date.

Mortgage:  With respect to each Mortgage Loan that is not a Co-op Loan, the mortgage, mortgage deed, deed of trust, or other instrument creating a first lien on or first priority ownership interest in an estate in fee simple in real property securing a Mortgage Note including any riders, addenda, assumption agreements, or modifications relating thereto. With respect to a Co-op Loan, the related Security Agreement.

Mortgage File:  With respect to any Mortgage Loan, a file pertaining to such Mortgage Loan that contains the Mortgage Loan Documents pertaining to such Mortgage Loan which are specified in Exhibit A attached hereto, and any additional mortgage documents pertaining to such Mortgage Loan required to be added to such Mortgage File pursuant to this Agreement.

Mortgage Interest Rate:  As to each Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan.

Mortgage Loan:  An individual mortgage loan that is subject to the terms of this Agreement, including the Servicing Rights thereto, each such mortgage loan originally sold and subject to this Agreement.

4

[TPW:NYLEGAL:503303.2] 19356-00088  01/24/2006 08:23 PM

**Mortgage Loan Documents**:  As to each Mortgage Loan, the documents set forth on Exhibit A of this Agreement.

**Mortgage Note**:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage, including any riders or addenda thereto.

**Mortgaged Property**: With respect to each Mortgage Loan that is not a Co-op Loan, the Mortgagor's real property securing repayment of the related Mortgage Note, consisting of real property improved by a Residential Dwelling.  With respect to a Co-op Loan, the related Co-op Stock and Co-op Lease securing the indebtedness of the Mortgagor under the related Mortgage Loan.

**Mortgagor**:  The obligor on a Mortgage Note.

**Pass-Through Transfer**:  The sale or transfer of some or all of the Mortgage Loans by the Purchaser to a trust to be formed as part of a publicly issued or privately placed mortgage-backed securities transaction.

**Periodic Rate Cap**:  With respect to each Adjustable Rate Mortgage Loan and any Adjustment Date therefor, a number of percentage points per annum that is set forth in the UBS Website and in the related Mortgage Note, which is the maximum amount by which the Mortgage Interest Rate for such Mortgage Loan may increase (without regard to the Maximum Mortgage Interest Rate) or decrease (without regard to the Minimum Mortgage Interest Rate) on such Adjustment Date from the Mortgage Interest Rate in effect immediately prior to such Adjustment Date, which may be a different amount with respect to the first Adjustment Date.

**Person**:  Any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

**Primary Mortgage Insurance Policy**:  With respect to any Mortgage Loan, the policy of primary mortgage guaranty insurance (including all endorsements thereto) issued with respect to such Mortgage Loan, if any, or any replacement policy.

**Primary Mortgage Insurer**:  The named insurer under any Primary Mortgage Insurance Policy.

**Purchase Price Percentage**:  The percentage of par used to calculate the purchase price for each Mortgage Loan as described in Section 2.3.

**Repurchase Price**:  The price at which Seller shall repurchase any Mortgage Loan, which, prior to the date which is twelve (12) months following the Funding Date shall be a price equal to the sum of (i) the product of the Stated Principal Balance of such Mortgage Loan times the Purchase Price Percentage (less the percentage of par set forth in the definition of Servicing Rights Repurchase Price), plus (ii) the Servicing Rights Repurchase Price, plus (iii) accrued but

5

unpaid interest on the Stated Principal Balance of such Mortgage Loan at the Mortgage Interest Rate through and including the last day of the month in which such repurchase occurs, plus (iv) any costs and damages incurred in connection with any violation of such Mortgage Loan of any predatory or abusive lending law, plus (v) all unreimbursed advances or servicing fees which are due to the Servicer in connection with the transfer of the servicing following such repurchase. Subsequent to the date which is twelve (12) months following the Funding Date, the Repurchase Price shall be a price equal to the sum of (i)(A) the Stated Principal Balance of such Mortgage Loan, plus (B) the product of the Stated Principal Balance of such Mortgage Loan times the Servicing Rights Repurchase Price, plus (ii) accrued but unpaid interest on the Stated Principal Balance of such Mortgage Loan at the Mortgage Interest Rate through and including the last day of the month in which such repurchase occurs, plus (v) all unreimbursed advances or servicing fees which are due to the Servicer in connection with the transfer of the servicing following such repurchase.

**Security Agreement**: With respect to a Co-op Loan, the agreement or mortgage creating a security interest in favor of the originator of the Co-op Loan in the related Co-op Stock.

**Servicer**: The party selected by the Purchaser to assume the servicing duties with respect to the Mortgage Loans following the date the servicing is transferred to the Purchaser as set forth in Section 2.5.

**Servicing File**: All documents in the possession of Seller or its agents relating to the origination and servicing of the related Mortgage Loan, including but not limited to the hazard insurance policy (with renewals noted on computer records), and, if required by law, the flood insurance policy, any disclosure statement required to be maintained, tax receipts, insurance premium receipts, ledger sheets, payment records, insurance claim files and correspondence, correspondence, current and historical computerized data files, and all other papers and records developed or originated by Seller or others and maintained by Seller, required to document the Mortgage Loan or to service the Mortgage Loan.

**Servicing Rights**: With respect to each Mortgage Loan, any and all of the following: (a) all rights to service the Mortgage Loan; (b) all rights to receive servicing fees, additional servicing compensation (including without limitation any late fees, assumption fees, penalties or similar payments with respect to the Mortgage Loan, and income on escrow accounts or other receipts on or with respect to the Mortgage Loan), reimbursements or indemnification for servicing the Mortgage Loan, and any payments received in respect of the foregoing and proceeds thereof; (c) the right to collect, hold and disburse escrow payments or other similar payments with respect to the Mortgage Loans and any amounts actually collected with respect thereto and to receive interest income on such amounts to the extent permitted by applicable law; (d) all accounts and other rights to payment related to any of the property described in this paragraph; (e) possession and use of any and all Servicing Files pertaining to the Mortgage Loans or pertaining to the past, present or prospective servicing of the Mortgage Loans; (f) all rights and benefits relating to the direct solicitation of the related Mortgagors for refinance or modification of the Mortgage Loans and attendant right, title and interest in and to the list of

6

[TPW:NYLEGAL:593503.2] 19534-00088 01/24/2005 08:33 PM

such Mortgagors and data relating to their respective Mortgage Loans; (g) all rights, powers and privileges incident to any of the foregoing; and (h) all agreements or documents creating, defining or evidencing any of the foregoing rights to the extent they relate to such rights.

Servicing Rights Repurchase Price:   With respect to the Servicing Rights of any Mortgage Loan, an amount equal to (A) with respect to any repurchase of a Mortgage Loan occurring prior to the two-year anniversary of the Funding Date, the related Servicing Right Repurchase Price Percentage times the Stated Principal Balance of such Mortgage Loan as of the date of repurchase, and (B) thereafter, the product of (i) the related Servicing Right Repurchase Price Percentage times the Stated Principal Balance of such Mortgage Loan as of the date of repurchase, times (ii) a fraction, not less than zero, the numerator of which is 12 minus the number of full months which have elapsed following the two-year anniversary of the Funding Date and the denominator of which is 12.

Servicing Right Repurchase Price Percentage:  With respect to each Mortgage Loan, the percentage set forth on the UBS Website.

Servicing Transfer Instructions:   With respect to any Mortgage Loan, the related Servicer's instructions for transfer of the servicing of such Mortgage Loan as provided by the Purchaser or such Servicer to the Seller, which instructions shall be effective upon delivery to Seller.

Standard & Poor's:   Standard & Poor's Rating Services, a division of The McGraw-Hill Companies Inc., and its successors in interest.

Stated Principal Balance:   As to each Mortgage Loan as of any date of determination, (i) the Unpaid Principal Balance of the related Mortgage Loan, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal.

UBS Guide:   The underwriting guidelines of the Purchaser which are used by the Seller in the origination of Mortgage Loans, a copy of which has been delivered to the Seller, as periodically updated from time to time on the UBS Website.

UBS Website:   The dedicated Internet website, its sub-sites, the UBS Guide and other information and requirements contained therein, maintained by or on behalf of the Purchaser for the purpose of purchasing Mortgage Loans.

UBS Website Program:   The program instituted by the Purchaser for the purpose of purchasing Mortgage Loans pursuant to the UBS Website, which are evidenced by the UBS Website, the related user agreement with the related seller, this Agreement, and any other document executed in connection therewith.

7

[TPW: NYLEGAL:500003.2] 19356-00088 01/24/2005 08:23 PM

Unpaid Principal Balance:  As to each Mortgage Loan, the outstanding principal balance of such Mortgage Loan as of the Cut-off Date, after application of Monthly Payments due on or before Cut-off Date, whether or not received.

Whole Loan Transfer:  Any sale or transfer of some or all of the Mortgage Loans by the Purchaser to a third party, which sale is not a Pass-Through Transfer.

8

[TPW: NYLEGAL:500002.2] 19356-00088 01/24/2005 08:23 PM

## ARTICLE II

### PURCHASE AND SALE OF THE MORTGAGE LOANS

**Section 2.1    Purchase and Sale of the Mortgage Loans**

On the Funding Date, upon satisfaction of the conditions set forth herein, Seller agrees to sell, and Purchaser agrees to purchase, all right, title and interest in the Mortgage Loans eligible for funding two (2) Business Days prior to the Funding Date, including, without limitation, all Servicing Rights with respect thereto. The obligation of each of Seller and Purchaser is subject to the fulfillment, on or prior to the Funding Date, of the condition that (i) each of the obligations of the other party required to be performed on or prior to the Funding Date pursuant to the terms of this Agreement shall have been duly performed, (ii) with respect to the Purchaser, the Seller shall have satisfied each of the requirements under the UBS Website Program, and (iii) the representations and warranties of the other party under this Agreement shall be true and correct as of the date hereof and as of the Funding Date. The closing for the purchase and sale of the Mortgage Loans will take place on the Funding Date by telephone, via the UBS Website, or confirmed by letter or telecopy. Simultaneously with the payment of the purchase price, the Seller does hereby sell, transfer, assign, set over and convey to Purchaser, without recourse, but subject to the terms of this Agreement and the related Assignment and Conveyance, all rights, title and interest of the Seller in and to the Mortgage Loan(s) and the Servicing Rights thereon, together with the related Mortgage Files and all rights and obligations arising under the documents contained therein.

On the Funding Date and in connection with the sale by the Seller of such Mortgage Loans to the Purchaser, the Seller and the Purchaser shall Electronically execute (as set forth in Section 4.11) an Assignment, and Conveyance containing the text set forth as Exhibit D hereto.

**Section 2.2    Purchase Price for Mortgage Loans**

On each Funding Date, Purchaser shall pay to Seller for the related Mortgage Loan(s) an amount equal to either:

(A) with respect to purchases where the Cut-off Date occurs prior to the Funding Date, an amount equal to (i) the Unpaid Principal Balance of the Mortgage Loan(s) multiplied by the Purchase Price Percentage, plus (ii) an amount equal to the interest accrued on the Mortgage Loan(s) at the Mortgage Interest Rate, from and including the Cut-off Date through and including the day prior to the Funding Date; or

(B) with respect to purchases where the Cut-off Date occurs after the Funding Date, an amount equal to (i) the Unpaid Principal Balance of the Mortgage Loan(s) multiplied by the Purchase Price Percentage, minus (ii) an amount equal to the interest accrued on the Mortgage Loan(s) at the Mortgage Interest Rate, from and including the Funding Date through and including the last day of the month in which the Funding Date occurs.

9

The payment by Purchaser shall be made by wire transfer before 4:00pm, Eastern Time, in immediately available funds to an account designated by Seller. If any miscalculation is reflected in the purchase price for the Mortgage Loans, the party benefiting from such error shall pay an amount sufficient to correct the error. The Purchaser shall own and be entitled to receive with respect to each Mortgage Loan purchased, (1) all scheduled principal due after the Cut-off Date, (2) all other recoveries of principal collected after the Cut-off Date (provided, however, that all scheduled payments of principal due on or before the Cut-off Date and collected by the Seller after the Cut-off Date shall belong to the Seller), and (3) all payments of interest on the Mortgage Loans minus that portion of any such interest payment that is allocable to the period prior to the Cut-off Date). The Unpaid Principal Balance of each Mortgage Loan as of the Cut-off Date is determined after application to the reduction of principal of payments of principal due on or before the Cut-off Date whether or not collected. Therefore, for the purposes of this Agreement, payments of scheduled principal and interest prepaid for a Due Date beyond the Cut-off Date shall not be applied to the principal balance as of the Cut-off Date. Such prepaid amounts shall be the property of the Purchaser. All payments of principal and interest due on a Due Date following the Cut-off Date shall belong to the Purchaser.

Section 2.3    Pricing; Delivery of Documents and Funding of Mortgage Loans

(a)    The Seller may, from time to time, offer for sale a Mortgage Loan pursuant to the UBS Website Program. In connection with such offer, the Seller shall upload onto the UBS Website all parameters required on the UBS Website in order for the issuance of a preliminary rate-lock quote. The UBS Website shall generate a rate-lock quote based on the parameters uploaded by the Seller. If the Seller accepts such quote, it shall indicate its acceptance on the UBS Website. The Seller acknowledges that any rate-lock quote issued pursuant to the UBS Website is conditioned upon the satisfactory loan due diligence described herein and as further set forth in UBS Website Program documents.

(b)    In accordance with the requirements of the UBS Website Program, Seller will, prior to the respective Funding Date, deliver Mortgage Loans to Purchaser or Purchaser's designee by delivering for each Mortgage Loan: (1) all documents listed on Exhibit A hereto, and (2) any other documents set forth on the UBS Website or in the UBS Guide.

(c)    The Purchaser or the Purchaser's designee may perform due diligence reviews on the related credit file and legal file relating to such Mortgage Loan. If the Purchaser makes such examination prior to the Funding Date and identifies any Mortgage Loans that do not conform in any material respect to the terms of the UBS Guide, such Mortgage Loans may, at the Purchaser's option, be rejected for purchase by the Purchaser. The Purchaser may, at its option, purchase a Mortgage Loan without conducting any partial or complete examination. The fact that the Purchaser has conducted or has determined not to conduct any partial or complete examination of the Mortgage Files shall not affect the Purchaser's (or any of its successors') rights to demand repurchase or other relief or remedy provided for in this Agreement.

10

(d)     The results of any such due diligence review will be posted on the UBS Website. Based upon the results of such due diligence review, a final rate-lock quote will be generated, which quote may be accepted or rejected by the Seller in accordance with the provisions and procedures set forth in the UBS Guide and on the UBS Website. If the Seller accepts (or is deemed to accept) such rate-lock quote, the Seller shall sell, and the Purchaser shall purchase, such Mortgage Loan on the related Funding Date for a purchase price based on the percentage of par set forth in the final rate-lock quote (each such percentage of par with respect to the related Mortgage Loan, the "Purchase Price Percentage").

### Section 2.4     Expenses

Seller shall pay any fees and disbursements of its attorneys and the costs and expenses incurred in connection with the recording of the Assignments of Mortgage (and any other intervening Assignments of Mortgage), and any taxes, governmental assessments, insurance premiums, water, sewer and municipal charges and similar expenses, which became due in respect of the Mortgaged Property on or prior to the Funding Date or which will become due within forty-five (45) days following the Funding Date. Additionally, all costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans and related Servicing Rights including, without limitation, any termination fees owed to Seller's document custodian, any costs relating to transfer of the Mortgage File or Servicing File and other Mortgage Loan records to Purchaser, the costs of delivering complete master file tape information and other electronically stored information to the Purchaser, the costs of notifying the Mortgagors, hazard, flood and mortgage insurance companies and other third parties as required, Purchaser's costs for setting up "lifetime" tax service contracts, the costs of transferring "lifetime" flood certification contracts to the Purchaser, and the legal fees and expenses of its attorneys shall be paid by the Seller. In the event that the "lifetime" flood certification contracts are not transferable to, or acceptable to Purchaser, Seller will also reimburse Purchaser for any costs related to setting up such flood contracts. Purchaser shall pay any of its expenses, including any fees and disbursements of its attorneys.

### Section 2.5     Servicing of the Mortgage Loans

Each Mortgage Loan be sold to Purchaser on the related Funding Date on a servicing released basis. Any Servicing Rights with respect to the servicing of the Mortgage Loans hereunder are assigned to Purchaser, and Purchaser assumes any obligations thereunder with respect to the Mortgage Loans.

Transfer of the servicing relating to the Mortgage Loans shall take place in accordance with the terms herein and the procedures set forth in the related Servicing Transfer Instructions. While certain items relating to matters set forth in the Servicing Transfer Instructions are mentioned in the body of this Agreement, such mention or lack thereof shall not be deemed to operate to release the Seller from its obligation to perform in accordance with the Servicing Transfer Instructions. In the event of a conflict between this Agreement and the Servicing Transfer Instructions, this Agreement shall prevail.

11

of the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller. Consequently, the sale of each Mortgage Loan shall be reflected as a sale on the Seller's business records, tax returns and financial statements.

**Section 2.8    Post Closing Delivery of Mortgage Loan Documents; Repurchase**

Promptly following receipt thereof, but in no event later than 180 days after the respective Funding Date, Seller shall deliver to Purchaser the following documents with respect to each Mortgage Loan:

(i)     For each Mortgage Loan in respect of which Seller previously tendered to Purchaser only a copy of the original Mortgage, the original of such Mortgage with evidence of recording thereon, however, if such originals are permanently retained by the applicable recording office then a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original;

(ii)    For each Mortgage Loan in respect of which Seller previously tendered to Purchaser only a copy of the policy of title insurance or a title insurance binder or commitment, the original policy of title insurance with respect to such Mortgage Loan;

(iii)   For each Mortgage Loan in respect of which Seller previously tendered to Purchaser only a copy of any original intervening assignment of the Mortgage, the original of such intervening assignment of the Mortgage, with evidence of recording thereon, however, if such originals are permanently retained by the applicable recording office then a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original; and

(iv)    For each Mortgage Loan in respect of which Seller previously tendered to Purchaser only a copy of any applicable assumption and modification agreements, the original of such assumption and modification agreements, with evidence of recording thereon (if recordation is required by applicable law), however, if such originals are permanently retained by the applicable recording office then a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original.

At Purchaser's option, Seller shall repurchase for the Repurchase Price any Mortgage Loan for which the Mortgage Loan Documents are not delivered within 180 days of the Funding Date as provided above, subject, however, to the provisions of this paragraph.  In the event that the documents described in (b)(i) through (b)(v) are not received by Purchaser within 180 days of the Funding Date, the Seller shall provide to Purchaser a written explanation as to the status of

13

[TPW:NYLEGAL:505003.2] 19336-00088 01/24/2005 08:23 PM

Seller shall transfer servicing to Purchaser as follows:

i)      If the Funding Date with respect to such Mortgage Loan occurred during the period beginning on the first day of the calendar month to and including the fourteenth (14th) day of the calendar month (or the twelfth (12th) day of February, with respect to any Funding Date in February), the effective transfer of servicing date with respect to such Mortgage Loans shall be the first (1st) day of the month following the Funding Date.

ii)     If the Funding Date with respect to such Mortgage Loan occurred after the fourteenth (14th) day of the calendar month (or the twelfth (12th) day of February, with respect to any Funding Date in February), the effective transfer of servicing date with respect to such Mortgage Loans shall be the first (1st) day of the second month following the Funding Date.

## Section 2.6    Non-Solicitation by Seller

From and after the respective Funding Date, the Seller shall not take any action or permit or cause any action to be taken by any of its agents, or by any independent contractors on the Seller's behalf, to personally, by telephone or mail, solicit the Mortgagor or obligor under any Mortgage Loan to refinance a Mortgage Loan or for any other financial products or services, including but not limited to home equity or insurance products, in whole or in part, without the prior written consent of the Purchaser. It is understood and agreed that all rights and benefits relating to the solicitation of any Mortgagors and the attendant rights, title and interest in and to the list of such Mortgagors and data relating to their Mortgages (including insurance renewal dates) shall be transferred to the Purchaser pursuant hereto on the Funding Date and the Seller shall take no action to undermine these rights and benefits. Notwithstanding the foregoing, it is understood and agreed that promotions undertaken by the Seller or any affiliate of the Seller which are directed to the general public at large or customers of the Seller generally, including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements shall not constitute solicitation under this Section 2.6.

## Section 2.7    Books and Records.

Record title to each Mortgage Note and the Mortgage as of the Funding Date shall be in the name of the Seller or one or more designees of the Purchaser, as the Purchaser shall designate. Notwithstanding the foregoing, beneficial ownership of each Mortgage Note and the Mortgage shall be vested solely in the Purchaser. All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Seller after the Cut-off Date (other than scheduled Monthly Payments due on or before the Cut-off Date) on or in connection with a Mortgage Loan shall be vested in the Purchaser or one or more designees of the Purchaser.

It is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Seller and not a pledge

12

[TPW: NYLEGAL:505003.2] 19356-00608  01/24/2005 08:23 PM

each outstanding document and may request an extension for delivery. Such extension shall not be unreasonably withheld, and there shall be no limitations on extensions in the event that a document has not been delivered due to a delay in a recording office. However, in no event shall such extension extend beyond 360 days.

Notwithstanding the foregoing, the parties agree that some or all of the Mortgage Loans subject to this Agreement may be registered on the MERS System, either through the recordation of a Mortgage showing MERS as nominee for the originating lender or by the recordation of an Assignment of Mortgage showing MERS as assignee. The Seller and the Purchaser hereby acknowledge that MERS will have no beneficial interest in any such Mortgage Loan and that the registration of such a Mortgage Loan with MERS will not in any way affect the rights, title, interest, obligations, or responsibilities of the parties under this Agreement, except as expressly provided in this Section 2.8. Subject to the Purchaser's consent, the Seller and the Purchaser agree to cooperate in all ways necessary to effectuate the use of the MERS System for the purpose of facilitating the transfer of such Mortgage Loans, and notwithstanding any other provisions of this Agreement to the contrary, agree to accept such documentation and evidence of transfer provided by MERS under its operating documents to accomplish the transfer of ownership in such Mortgage Loans. For any Mortgage Loan registered on the MERS System, (A) the Seller shall not be required to deliver any Assignment of Mortgage as described in Exhibit A; (B) the Seller shall initiate with MERS electronic transmissions of MERS identification numbers and such other information as required by MERS, and such electronic transmissions shall identify the Purchaser as the owner of such Mortgage Loan; and (C) the Seller shall pay any fees charged by MERS in connection with the electronic transfer of evidence of ownership to the Purchaser.

**Section 2.9     Closing Documents.**

On or before the initial Funding Date, the Seller shall submit to the Purchaser fully executed originals of the following documents:

    (i)    this Agreement, in four counterparts;

    (ii)    an Officer's Certificate, in the form of Exhibit B hereto, including all attachments thereto; and

    (iii)    a certificate or other evidence of merger or change of name, signed or stamped by the applicable regulatory authority, if any of the Mortgage Loans were acquired by the Seller by merger or acquired or originated by the Seller while conducting business under a name other than its present name, if applicable.

On or before each Funding Date the Seller shall submit to the Purchaser fully executed originals of the following documents:

14

(i)   an Electronically executed Assignment and Conveyance, the text of which is set forth Exhibit D; and

(ii)   if any of the Mortgage Loans has at any time been subject to any security interest, pledge or hypothecation for the benefit of any Person, a Security Release Certification, in the form of Exhibit C hereto, executed by such Person.

## ARTICLE III

## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER CONCERNING MORTGAGE LOANS; REPURCHASE OF MORTGAGE LOANS

### Section 3.1    Individual Mortgage Loans

Seller hereby represents and warrants to and agrees with Purchaser that, as to each Mortgage Loan, as of its respective Funding Date:

(a)   The information with respect to such Mortgage Loan uploaded on the UBS Website with respect to such Mortgage Loan is complete, true and correct in all material respects;

(b)   The Mortgage and the Mortgage Note have not been assigned or pledged, and, immediately prior to the transfer thereof to the Purchaser pursuant to Section 2.1, the Seller had good and marketable title thereto, and the Seller is the sole owner and holder of such Mortgage Loan free and clear of any and all liens, claims, encumbrances, participation interests, equities, pledges, charges, or security interests of any nature and has full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign such Mortgage Loan pursuant to this Agreement. Upon the transfer thereof to the Purchaser pursuant to Section 2.1, the Seller will have taken all actions necessary on its part to be taken so that the Purchaser will have good indefeasible title to, and will be sole owner of, the Mortgage and the Mortgage Note, free and clear of any and all liens, claims, encumbrances, participation interests, equities, pledges, charges, or security interests of any nature, subject to bankruptcy, insolvency, moratorium, reorganization and similar laws relating to or limiting the enforcement of creditor's rights generally;

(c)   For each Mortgage Loan that is not a Co-op Loan, the Mortgage is a valid, subsisting and enforceable first lien on the Mortgaged Property including all buildings, fixtures, installations and improvements to the Mortgaged Property; and the Mortgaged Property is free and clear of all encumbrances and liens having parity with or priority over the first lien of the Mortgage except for (i) the lien of current real property taxes and assessments not yet due and payable, (ii) covenants, conditions and restrictions, rights of way, easements, mineral right reservations and other matters of public record as of the date of recording of such Mortgage, such exceptions generally being acceptable under prudent mortgage lending standards and

15

[TPW:NYLEGAL:505003.3] 19356-00061 01/24/2005 03:23 PM

specifically reflected in the appraisal made in connection with the origination of such Mortgage Loan, and (iii) other matters to which like properties are commonly subject that do not materially interfere with the value, use, enjoyment or marketability of the Mortgaged Property. With respect to a Mortgage Loan that is a Co-op Loan, the Mortgage creates a first lien or a first priority ownership interest in the stock ownership and leasehold rights associated with the cooperative unit securing the related Mortgage Note;

(d)     The terms of the Mortgage and the Mortgage Note have not been impaired, waived, altered, or modified in any respect, except by a written instrument which has been recorded, if necessary, to protect the interest of the Purchaser and which has been delivered to the Purchaser. The substance of any such alteration or modification has been approved, to the extent necessary, by the Primary Mortgage Insurer, if any, and the insurer under the applicable mortgage title insurance policy;

(e)     No instrument of release, waiver, alteration, or modification has been executed in connection with such Mortgage Loan or Mortgaged Property, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement which has been approved by the Primary Mortgage Insurer, if any, and which is part of the Mortgage File and has been delivered to the Purchaser;

(f)     There is no default, breach, violation, or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute such a default, breach, violation, or event of acceleration, and neither the Seller nor any prior seller or servicer, has waived any such default, breach, violation, or event of acceleration. All taxes, governmental assessments (including assessments payable in future installments), water, sewer and municipal charges, insurance premiums, leasehold payments, or ground rents which previously became due and owing in respect of or affecting the related Mortgaged Property have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable. The Seller has not advanced funds, or induced, solicited, or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required by the Mortgage or the Mortgage Note. There has been no delinquency, exclusive of any grace period, in any payment by the Mortgagor on any Mortgage Loan during the last twelve (12) months. As of the Funding Date, each of the Mortgage Loans will have an actual interest paid to date as of the Cut-off Date (or later) and will be due for the scheduled Monthly Payment following the month in which the Funding Date occurs (or later), as evidenced by a posting to Seller's servicing collection system;

(g)     The Mortgaged Property is free of material damage and in good repair, and there is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property, nor has any notice of any such pending or threatened proceeding been received or is such a proceeding currently occurring, so as to adversely impair the value or marketability of the Mortgaged Property;

16

{7798:NYLEGAL:303465.2} 10286-00588 01/24/2005 06:33 PM

(h)     There are no mechanics' or similar liens or claims which have been filed for work, labor, or material (and no rights are outstanding that under law could give rise to such lien) which are, or may be, liens prior or equal to, or coordinate with, the lien of the related Mortgage;

(i)     All of the improvements which were included for the purpose of determining the Appraised Value of the Mortgaged Property were completed at the time that such Mortgage Loan was originated and lie wholly within the boundaries and building restriction lines of such Mortgaged Property and all improvements on the property comply with all applicable zoning and subdivision laws and ordinances. Except for de minimis encroachments permitted by the Fannie Mae Guides (MBS Special Servicing Option) or the Freddie Mac Guide, no improvements on adjoining properties encroach upon the Mortgaged Property;

(j)     All parties that have had any interest in the Mortgage, whether as mortgagee, assignee, pledgee, or otherwise, are (or, during the period in which they held and disposed of such interest, were) (i) in compliance with any and all applicable "doing business" and licensing requirements of the laws of the state wherein the Mortgaged Property is located and (ii)(A) organized under the laws of such state, (B) qualified to do business in such state, (C) federal savings and loan associations or national banks having principal offices in such state, (D) not doing business in such state, or (E) not required to qualify to do business in such state;

(k)     No Mortgagor was required to purchase any credit life, disability, accident or health insurance product as a condition of obtaining the extension of credit. No Mortgagor obtained a prepaid single premium credit life, disability, unemployment, property, mortgage, accident or health insurance policy in connection with the origination of the Mortgage Loan; No proceeds of the Mortgage Loan were used by the related Mortgagor to purchase or finance the purchase of any single premium credit life insurance policies as part of the origination of, or as a condition to closing, such Mortgage Loan;

(l)     On or prior to the Funding Date, the Seller has, in accordance with Section 2.3(a), delivered to the Purchaser originals of each of the documents with respect to such Mortgage Loan specified in Section 2.3(a) (or the documents specified therein permitted to be delivered in lieu thereof) and the other documents in the Mortgage File. There are no custodial agreements in effect adversely affecting the right or ability of the Seller to make the deliveries of such documents. Each of the documents with respect to such Mortgage Loan specified in Section 2.3(a), Exhibit A hereto or in the Mortgage File is genuine, true, correct and complete and has not been altered or modified in any way except as noted in the Mortgage File;

(m)     The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof and each party assuming liability therefore, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws affecting the enforcement of creditors' rights generally and except that the equitable remedy of specific performance and other equitable remedies are subject to the discretion of the courts. All parties to the Mortgage

17

Note and the Mortgage had legal capacity to execute the Mortgage Note and the Mortgage and convey the estate therein purported to be conveyed, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties or pursuant to a valid power-of-attorney. The Mortgagor is a natural person who is a party to the Mortgage Note and the Mortgage in an individual capacity or in the capacity of trustee in connection with an inter vivos trust meeting the requirements of Fannie Mae. With respect to each inter-vivos trust, holding title to the Mortgaged Property in such trust will not diminish any rights as a creditor including the right to full title to the Mortgage Property in the event foreclosure proceedings are initiated;

(n) The transfer of the Mortgage Note and the Mortgage as and in the manner contemplated by this Agreement is sufficient fully to transfer to the Purchaser all right, title and interest of the Seller thereto as note Purchaser and mortgagee subject to bankruptcy, insolvency, moratorium, reorganization and similar laws relating to or limiting the enforcement of creditors' rights generally. The Mortgage has been duly assigned (except with respect to any Mortgage Loan assigned to MERS) and the Mortgage Note has been duly endorsed as provided in Exhibit A. With respect to each Mortgage Loan that is not assigned to MERS, the Assignment of Mortgage delivered to the Purchaser is in recordable form and is acceptable for recording under the laws of the applicable jurisdiction;

(o) At origination of each Mortgage Loan, any and all requirements of any federal, state, or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, predatory and abusive lending laws, or disclosure laws applicable to such Mortgage Loan had been complied with, and the Seller shall maintain, in its possession, available for the Purchaser's inspection, and shall deliver to the Purchaser or its designee upon demand, evidence of compliance with all such requirements. The consummation of the transactions contemplated by this Agreement will not cause the violation of any such laws;

(p) The proceeds of such Mortgage Loan have been fully disbursed, there is no requirement for, and the Seller shall not make any, future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow therefore have been complied with. Any future advances made prior to the Cut-off Date have been consolidated with the principal balance secured by the Mortgage, and such principal balance, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the Mortgagee's consolidated interest or by other title evidence acceptable to Purchaser. There is no obligation on the part of the Seller or any other party to make payments in addition to those made by the Mortgagor. The Unpaid Principal Balance as of the Cut-off Date does not exceed the original principal amount of such Mortgage Loan. All costs, fees and expenses incurred in making, or closing or recording such Mortgage Loan have been paid and the Mortgagor is not entitled to any refund of any amounts paid or due to the Mortgagee pursuant to the Mortgage Note or Mortgage;

18

[TPW: NYLEGAL:303603.3] 19556-00088 01/24/2005 08:25 PM

(q)     Such Mortgage Loan is covered by an ALTA mortgage title insurance policy or such other generally used and acceptable form of policy (which has an adjustable rate mortgage endorsement in the form of ALTA 6.0 or 6.1, if applicable), or insurance acceptable to Fannie Mae or Freddie Mac (with environmental lien endorsement and condominium endorsement, to the extent applicable), issued by and the valid and binding obligation of a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, and its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of such Mortgage Loan, and with respect to Adjustable Rate Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate and Monthly Payment, such mortgage title insurance policy is in full force and effect.  Additionally, such lender's title insurance policy affirmatively insures ingress and egress to and from the Mortgaged Property, and against encroachments by or upon the Mortgaged Property or any interest therein.  The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement.  No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy;

(r)     All buildings or other customarily insured improvements upon the Mortgaged Property are insured by an insurer acceptable under the Fannie Mae Guides, against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Fannie Mae Guides or by the Freddie Mac Guides, in an amount representing coverage not less than the lesser of (i) the maximum insurable value of the improvements securing such Mortgage Loans, and (ii) the greater of (a) the outstanding principal balance of the Mortgage Loan, and (b) an amount such that the proceeds thereof shall be sufficient to prevent the Mortgagor and/or the mortgagee from becoming a co-insurer.  All such standard hazard policies are in full force and effect and on the date of origination contained a standard mortgagee clause naming the Seller and its successors in interest and assigns as loss payee and such clause is still in effect and all premiums due thereon have been paid.  If the Mortgaged Property is located in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), such Mortgaged Property is covered by a flood insurance policy meeting the requirements of current guidelines of the Federal Insurance Administration which policy conforms to the requirements of Fannie Mae and Freddie Mac.  Each individual insurance policy has been validly issued and is in full force and effect.  The Seller has caused to be performed any and all acts required to preserve the rights and interests of the Purchaser in all insurance policies required by this Agreement, including, without limitation, notification of insurers, and assignment of policies or interests therein.  Each individual insurance policy contains a standard mortgagee clause naming the Seller, and its successors and assigns, as mortgagee and loss payee.  All premiums thereon have been paid.  The Mortgage obligates the Mortgagor to maintain all such insurance at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the Purchaser of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense and to seek

19

{TPW: NYLEGAL:502002.3} 19359-00066 01/24/2005 09:23 PM

reimbursement therefore from the Mortgagor, and no action, inaction or event has occurred, and no state of facts exists that has, or will result in, the exclusion from, or denial of, or defense to the coverage of any such insurance policy or the validity, binding effect and enforceability thereof;

(s)     There is no valid offset, defense, counterclaim or right of rescission as to any Mortgage Note or Mortgage, including the obligation of the Mortgagor to pay the unpaid principal of or interest on such Mortgage Note nor will the operation of any of the terms of the Mortgage Note or the exercise of any right thereunder render the Mortgage unenforceable, in-whole or in-part, or subject to any off-set, defense, counterclaim or right of rescission;

(t)     Each Mortgage Loan was originated by the Seller; or by a savings and loan association, savings bank, commercial bank, credit union, insurance Seller, or similar institution that is supervised and examined by a Federal or state authority; or by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act. Such Mortgage Loan has not been sold by the Seller to any Person other than the Purchaser;

(u)     Principal payments on such Mortgage Loan commenced no more than sixty days after funds were disbursed in connection with such Mortgage Loan. The Mortgage Note requires a Monthly Payment (which changes on each Adjustment Date with respect to Adjustable Rate Mortgage Loans) which is sufficient to fully amortize the original principal balance over the remaining term thereof and to pay interest at the Mortgage Interest Rate. Such Mortgage Loan does not contain terms or provisions which would result in negative amortization. The Index, the Gross Margin, the Maximum Mortgage Interest Rate, the Minimum Mortgage Interest Rate, the Periodic Rate Cap, and the Initial Rate Cap is as provided on the UBS Website. No Mortgage Loan is a Convertible Mortgage Loan;

(v)     Such Mortgage Loan is a conventional residential mortgage loan having an original term to maturity of not more than thirty years with interest payable in arrears on the first day of each month;

(w)     The Mortgage contains customary and enforceable provisions which render the rights and remedies of the Purchaser thereof adequate for the realization against the Mortgaged Property of the benefits of the security, including (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Following origination of the Mortgage Loan, the Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the Mortgagor has not filed for protection under applicable bankruptcy laws. There is no homestead, dower, curtesy, or other exemption or right available to the Mortgagor or any other person which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage. The Mortgage contains customary and enforceable provisions for the acceleration of the payment of the unpaid principal balance of such Mortgage Loan in the event all or any part of the related Mortgaged Property is sold or otherwise transferred without the prior consent of the Purchaser thereunder;

20

[TPW:NYLEGAL:503993.2] 19356-00088 01/04/2005 08:23 PM

(x)     If the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in such Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(y)     The Mortgaged Property consists of a single parcel of real property separately assessed for tax purposes, upon which is erected or an attached one-to-four family residence, or an individual condominium unit, or an individual unit in a planned unit development. Such residence, dwelling, or unit is not (i) a property constituting part of a syndication, (ii) a time share unit, (iii) a mobile home or (iv) a recreational vehicle. No portion of any Mortgaged Property is being used for commercial purposes. Any condominium unit or planned unit development is acceptable to Fannie Mae or Freddie Mac or is otherwise "warrantable" with respect thereto;

(z)     With respect to each Mortgage Loan secured in whole or in part by the interest of the Mortgagor as a lessee under a ground lease of a Mortgaged Property (a "Ground Lease") the real property securing such Mortgage Loan is located in a jurisdiction in which the use of leasehold estates for residential properties is a widely-accepted practice and:

    (i)     Such Ground Lease is valid, in good standing, and in full force and effect;

    (ii)    The lessee is not in default under any provision of the lease;

    (iii)   The term of the Ground Lease exceeds the maturity date of the related Mortgage Loan by at least ten years;

    (iv)    The mortgagee under the Mortgage Loan is given at least 30 days' notice of any default and an opportunity to cure any defaults under the Ground Lease or to take over the Mortgagor's rights under the Ground Lease;

    (v)     The Ground Lease does not contain any default provisions that could give rise to forfeiture or termination of the Ground Lease except for the non-payment of the Ground Lease rents; and

    (vi)    The Ground Lease provides that the leasehold can be transferred, mortgaged and sublet an unlimited number of times either without restriction or on payment of a reasonable fee and delivery of reasonable documentation to the lessor.

(aa)    The Loan-to-Value Ratio of such Mortgage Loan is either (i) not greater than 80% or (ii) greater than 80% but not greater than 95% and the Mortgage Loan is insured as to payment defaults to the extent required by Fannie Mae for mortgage loans purchased by it under a Primary Mortgage Insurance Policy, or (iii) greater than 80% but not greater than 95% and the Seller has indicated on the UBS Website that the Mortgage Loan is not subject to a Primary

21

[TYW: NYLEGAL:302003.2] 19356-00068 01/24/2005 08:33 PM

(b)     The Mortgage and the Mortgage Note have not been assigned or pledged, and, immediately prior to the transfer thereof to the Purchaser pursuant to Section 2.1, the Seller had good and marketable title thereto, and the Seller is the sole owner and holder of such Mortgage Loan free and clear of any and all liens, claims, encumbrances, participation interests, equities, pledges, charges, or security interests of any nature and has full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign such Mortgage Loan pursuant to this Agreement. Upon the transfer thereof to the Purchaser pursuant to Section 2.1, the Seller will have taken all actions necessary on its part to be taken so that the Purchaser will have good indefeasible title to, and will be sole owner of, the Mortgage and the Mortgage Note, free and clear of any and all liens, claims, encumbrances, participation interests, equities, pledges, charges, or security interests of any nature, subject to bankruptcy, insolvency, moratorium, reorganization and similar laws relating to or limiting the enforcement of creditor's rights generally.

(c)     For each Mortgage Loan that is not a Co-op Loan, the Mortgage is a valid, subsisting and enforceable first lien on the Mortgaged Property including all buildings, fixtures, installations and improvements to the Mortgaged Property, and the Mortgaged Property is free and clear of all encumbrances and liens having parity with or priority over the first lien of the Mortgage except for (i) the lien of current real property taxes and assessments not yet due and payable, (ii) covenants, conditions and restrictions, rights of way, easements, mineral right reservations and other matters of public record as of the date of recording of such Mortgage, such exceptions generally being acceptable under prudent mortgage lending standards and specifically reflected in the appraisal made in connection with the origination of such Mortgage Loan, and (iii) other matters to which like properties are commonly subject that do not materially interfere with the value, use, enjoyment or marketability of the Mortgaged Property. With respect to a Mortgage Loan that is a Co-op Loan, the Mortgage creates a first lien or a first priority ownership interest in the stock ownership and leasehold rights associated with the cooperative unit securing the related Mortgage Note;

(d)     The terms of the Mortgage and the Mortgage Note have not been impaired, waived, altered, or modified in any respect, except by a written instrument which has been recorded, if necessary, to protect the interest of the Purchaser and which has been delivered to the Purchaser. The substance of any such alteration or modification has been approved, to the extent necessary, by the Primary Mortgage Insurer, if any, and the insurer under the applicable mortgage title insurance policy.

(e)     No instrument of release, waiver, alteration, or modification has been executed in connection with such Mortgage Loan or Mortgaged Property, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement which has been approved by the Primary Mortgage Insurer, if any, and which is part of the Mortgage File and has been delivered to the Purchaser.

(f)     There is no default, breach, violation, or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute such a default, breach, violation, or event of acceleration, and neither the Seller nor any prior seller or servicer, has waived any such default, breach,

14

[NYW- NYLEGAL:224316.21 19356-00068  04/07/2004 5:04 PM]

violation, or event of acceleration. All taxes, governmental assessments (including assessments payable in future installments), water, sewer and municipal charges, insurance premiums, leasehold payments, or ground rents which previously became due and owing in respect of or affecting the related Mortgaged Property have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable. The Seller has not advanced funds, or induced, solicited, or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required by the Mortgage or the Mortgage Note. There has been no delinquency, exclusive of any grace period, in any payment by the Mortgagor on any Mortgage Loan during the last twelve (12) months. As of the Funding Date, each of the Mortgage Loans will have an actual interest paid to date as of the Cut-off Date (or later) and will be due for the scheduled Monthly Payment following the month in which the Funding Date occurs (or later), as evidenced by a posting to Seller's servicing collection system.

(g)    The Mortgaged Property is free of material damage and in good repair, and there is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property, nor has any notice of any such pending or threatened proceeding been received or is such a proceeding currently occurring, so as to adversely impair the value or marketability of the Mortgaged Property.

(h)    There are no mechanics' or similar liens or claims which have been filed for work, labor, or material (and no rights are outstanding that under law could give rise to such lien) which are, or may be, liens prior or equal to, or coordinate with, the lien of the related Mortgage.

(i)    All of the improvements which were included for the purpose of determining the Appraised Value of the Mortgaged Property were completed at the time that such Mortgage Loan was originated and lie wholly within the boundaries and building restriction lines of such Mortgaged Property and all improvements on the property comply with all applicable zoning and subdivision laws and ordinances. Except for de minimis encroachments permitted by the Fannie Mae Guides (MBS Special Servicing Option) or the Freddie Mac Guide, no improvements on adjoining properties encroach upon the Mortgaged Property.

(j)    All parties that have had any interest in the Mortgage, whether as mortgagee, assignee, pledgee, or otherwise, are (or, during the period in which they held and disposed of such interest, were) (i) in compliance with any and all applicable "doing business" and licensing requirements of the laws of the state wherein the Mortgaged Property is located and (ii)(A) organized under the laws of such state, (B) qualified to do business in such state, (C) federal savings and loan associations or national banks having principal offices in such state, (D) not doing business in such state, or (E) not required to qualify to do business in such state.

(k)    No Mortgagor was required to purchase any credit life, disability, accident or health insurance product as a condition of obtaining the extension of credit. No Mortgagor obtained a prepaid single premium credit life, disability, accident or health insurance policy in connection with the origination of the Mortgage Loan; No proceeds of the Mortgage Loan were used by the related Mortgagor to

15

purchase or finance the purchase of any single premium credit life insurance policies as part of the origination of, or as a condition to closing, such Mortgage Loan.

(l)    On or prior to the Funding Date, the Seller has, in accordance with Section 2.3(a), delivered to the Purchaser originals of each of the documents with respect to such Mortgage Loan specified in Section 2.3(a) (or the documents specified therein permitted to be delivered in lieu thereof) and the other documents in the Mortgage File. There are no custodial agreements in effect adversely affecting the right or ability of the Seller to make the deliveries of such documents. Each of the documents with respect to such Mortgage Loan specified in Section 2.3(a). Exhibit A hereto or in the Mortgage File is genuine, true, correct and complete and has not been altered or modified in any way except as noted in the Mortgage File.

(m)    The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof and each party assuming liability therefore, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws affecting the enforcement of creditors' rights generally and except that the equitable remedy of specific performance and other equitable remedies are subject to the discretion of the courts. All parties to the Mortgage Note and the Mortgage had legal capacity to execute the Mortgage Note and the Mortgage and convey the estate therein purported to be conveyed, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties or pursuant to a valid power-of-attorney. The Mortgagor is a natural person who is a party to the Mortgage Note and the Mortgage in an individual capacity or in the capacity of trustee in connection with an inter vivos trust meeting the requirements of Fannie Mae. With respect to each inter-vivos trust, holding title to the Mortgaged Property in such trust will not diminish any rights as a creditor including the right to full title to the Mortgage Property in the event foreclosure proceedings are initiated.

(n)    The transfer of the Mortgage Note and the Mortgage as and in the manner contemplated by this Agreement is sufficient fully to transfer to the Purchaser all right, title and interest of the Seller thereto as note Purchaser and mortgagee subject to bankruptcy, insolvency, moratorium, reorganization and similar laws relating to or limiting the enforcement of creditors' rights generally. The Mortgage has been duly assigned (except with respect to any Mortgage Loan assigned to MERS) and the Mortgage Note has been duly endorsed as provided in Section 2.3(a). With respect to each Mortgage Loan that is not assigned to MERS, the Assignment of Mortgage delivered to the Purchaser is in recordable form and is acceptable for recording under the laws of the applicable jurisdiction.

(o)    At origination of each Mortgage Loan, any and all requirements of any federal, state, or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, predatory and abusive lending laws, or disclosure laws applicable to such Mortgage Loan had been complied with, and the Seller shall maintain, in its possession, available for the Purchaser's inspection, and shall deliver to the Purchaser or its designee upon demand, evidence of compliance with all such requirements. The consummation of the transactions contemplated by this Agreement will not cause the violation of any such laws.

16

(p)    The proceeds of such Mortgage Loan have been fully disbursed, there is no requirement for, and the Seller shall not make any, future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow therefore have been complied with. Any future advances made prior to the Cut-off Date have been consolidated with the principal balance secured by the Mortgage, and such principal balance, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the Mortgagee's consolidated interest or by other title evidence acceptable to Purchaser. There is no obligation on the part of the Seller or any other party to make payments in addition to those made by the Mortgagor. The Unpaid Principal Balance as of the Cut-off Date does not exceed the original principal amount of such Mortgage Loan. All costs, fees and expenses incurred in making, or closing or recording such Mortgage Loan have been paid and the Mortgagor is not entitled to any refund of any amounts paid or due to the Mortgagee pursuant to the Mortgage Note or Mortgage.

(q)    Such Mortgage Loan is covered by an ALTA mortgage title insurance policy or such other generally used and acceptable form of policy (which has an adjustable rate mortgage endorsement in the form of ALTA 6.0 or 6.1, if applicable), or insurance acceptable to Fannie Mae or Freddie Mac (with environmental lien endorsement and condominium endorsement, to the extent applicable), issued by and the valid and binding obligation of a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, and its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of such Mortgage Loan, and with respect to Adjustable Rate Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate and Monthly Payment, such mortgage title insurance policy is in full force and effect. Additionally, such lender's title insurance policy affirmatively insures ingress and egress to and from the Mortgaged Property, and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy.

(r)    All buildings or other customarily insured improvements upon the Mortgaged Property are insured by an insurer acceptable under the Fannie Mae Guides, against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Fannie Mae Guides or by the Freddie Mac Guides, in an amount representing coverage not less than the lesser of (i) the maximum insurable value of the improvements securing such Mortgage Loans, and (ii) the greater of (a) the outstanding principal balance of the Mortgage Loan, and (b) an amount such that the proceeds thereof shall be sufficient to prevent the Mortgagor and/or the mortgagee from becoming a co-insurer. All such standard hazard policies are in full force and effect and on the date of origination contained a standard

17

[TPW: NYLEGAL:624316.2] 19356/0088  04/09/2004 5:08 PM]

mortgagee clause naming the Seller and its successors in interest and assigns as loss payee and such clause is still in effect and all premiums due thereon have been paid. If the Mortgaged Property is located in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), such Mortgaged Property is covered by a flood insurance policy meeting the requirements of current guidelines of the Federal Insurance Administration which policy conforms to the requirements of Fannie Mae and Freddie Mac. Each individual insurance policy has been validly issued and is in full force and effect. The Seller has caused to be performed any and all acts required to preserve the rights and interests of the Purchaser in all insurance policies required by this Agreement, including, without limitation, notification of insurers, and assignment of policies or interests therein. Each individual insurance policy contains a standard mortgagee clause naming the Seller and its successors and assigns, as mortgagee and loss payee. All premiums thereon have been paid. The Mortgage obligates the Mortgagor to maintain all such insurance at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the Purchaser of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefore from the Mortgagor, and no action, inaction or event has occurred, and no state of facts exists that has, or will result in, the exclusion from, or denial of, or defense to the coverage of any such insurance policy or the validity, binding effect and enforceability thereof.

(s)    There is no valid offset, defense, counterclaim or right of rescission as to any Mortgage Note or Mortgage, including the obligation of the Mortgagor to pay the unpaid principal of or interest on such Mortgage Note nor will the operation of any of the terms of the Mortgage Note or the exercise of any right thereunder render the Mortgage unenforceable, in-whole or in-part, or subject to any off-set, defense, counterclaim or right of rescission.

(t)    Each Mortgage Loan was originated by the Seller, or by a savings and loan association, savings bank, commercial bank, credit union, insurance Seller, or similar institution that is supervised and examined by a Federal or state authority; or by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act. Such Mortgage Loan has not been sold by the Seller to any Person other than the Purchaser.

(u)    Principal payments on such Mortgage Loan commenced no more than sixty days after funds were disbursed in connection with such Mortgage Loan. The Mortgage Note requires a Monthly Payment (which changes on each Adjustment Date with respect to Adjustable Rate Mortgage Loans) which is sufficient to fully amortize the original principal balance over the remaining term thereof and to pay interest at the Mortgage Interest Rate. Such Mortgage Loan does not contain terms or provisions which would result in negative amortization. The Index, the Gross Margin, the Maximum Mortgage Interest Rate, the Minimum Mortgage Interest Rate, the Periodic Rate Cap, and the Initial Rate Cap is as provided on the UBS Website. No Mortgage Loan is a Convertible Mortgage Loan.

(v)    Such Mortgage Loan is a conventional residential mortgage loan having an original term to maturity of not more than thirty years with interest payable in arrears on the first day of each month.

18

(w)    The Mortgage contains customary and enforceable provisions which render the rights and remedies of the Purchaser thereof adequate for the realization against the Mortgaged Property of the benefits of the security, including (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Following origination of the Mortgage Loan, the Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the Mortgagor has not filed for protection under applicable bankruptcy laws. There is no homestead, dower, curtesy, or other exemption or right available to the Mortgagor or any other person which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage. The Mortgage contains customary and enforceable provisions for the acceleration of the payment of the unpaid principal balance of such Mortgage Loan in the event all or any part of the related Mortgaged Property is sold or otherwise transferred without the prior consent of the Purchaser thereunder.

(x)    If the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in such Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(y)    The Mortgaged Property consists of a single parcel of real property separately assessed for tax purposes, upon which is erected a detached or an attached one-to-four family residence, or an individual condominium unit, or an individual unit in a planned unit development. Such residence, dwelling, or unit is not (i) a property constituting part of a syndication, (ii) a time share unit, (iii) a mobile home or (iv) a recreational vehicle. No portion of any Mortgaged Property is being used for commercial purposes. Any condominium unit or planned unit development is acceptable to Fannie Mae or Freddie Mac or is otherwise "warrantable" with respect thereto.

(z)    With respect to each Mortgage Loan secured in whole or in part by the interest of the Mortgagor as a lessee under a ground lease of a Mortgaged Property (a "Ground Lease") the real property securing such Mortgage Loan is located in a jurisdiction in which the use of leasehold estates for residential properties is a widely-accepted practice and:

(i)    Such Ground Lease is valid, in good standing, and in full force and effect;

(ii)    The lessee is not in default under any provision of the lease;

(iii)    The term of the Ground Lease exceeds the maturity date of the related Mortgage Loan by at least ten years;

(iv)    The mortgage under the Mortgage Loan is given at least 30 days' notice of any default and an opportunity to cure any defaults under the Ground Lease or to take over the Mortgagor's rights under the Ground Lease;

19

(v)    The Ground Lease does not contain any default provisions that could give rise to forfeiture or termination of the Ground Lease except for the non-payment of the Ground Lease rents; and

(vi)    The Ground Lease provides that the leasehold can be transferred, mortgaged and sublet an unlimited number of times either without restriction or on payment of a reasonable fee and delivery of reasonable documentation to the lessor.

(aa)    The Loan-to-Value Ratio of such Mortgage Loan is either (i) not greater than 80% or (ii) greater than 80% but not greater than 95% and the Mortgage Loan is insured as to payment defaults to the extent required by Fannie Mae for mortgage loans purchased by it under a Primary Mortgage Insurance Policy, or (iii) greater than 80% but not greater than 95% and the Seller has indicated on the UBS Website that the Mortgage Loan is not subject to a Primary Mortgage Insurance Policy. Any such Primary Mortgage Insurance Policy is issued by a Mortgage Insurer licensed to do business in the state in which the Mortgaged Property is located and acceptable to Fannie Mae or Freddie Mac as of the Funding Date. Such Primary Mortgage Insurance Policy insures the named insured and its successors and assigns and provides coverage at least until the Mortgage Loan meets the requirements of Fannie Mae for the termination of such coverage. All provisions of such Primary Mortgage Insurance Policy have been and are being complied with; such policy is valid and in full force and effect and all premiums due thereunder have been paid. If the Mortgage Loan is subject to a Primary Mortgage Insurance Policy, the Mortgagor is obligated under the Mortgage to maintain such insurance and pay all premiums and charges in connection therewith and the Mortgage Interest Rate for such Mortgage Loan is net of any such insurance premium. None of the Mortgage Loans are covered by "lender paid" mortgage insurance.

(bb)    No action has been taken or omitted, and no event has occurred and no state of facts exists or has existed on or prior to the Funding Date (whether or not known to the Seller on or prior to such date) which has resulted or will result in an exclusion from, denial of, or defense to coverage under the Primary Mortgage Insurance Policy with respect to such Mortgage Loan, including, without limitation, any exclusions, denials, or defenses which would limit or reduce the availability of the timely payment of the full amount of the loss otherwise due thereunder to the insured, whether arising out of actions, representations, errors, omissions, negligence, or fraud of the Seller, the related Mortgagor, or any party involved in the application for such coverage, including the appraisal, plans and specifications and other exhibits or documents submitted therewith to the insurer under such insurance policy, or for any other reason under such coverage, but not including the failure of such insurer to pay by reason of such insurer's breach of such insurance policy or such insurer's financial inability to pay.

(cc)    Such Mortgage Loan was underwritten in accordance with the UBS Guide and the Mortgage and Mortgage Note are on forms acceptable to Fannie Mae and Freddie Mac.

(dd)    There exist no deficiencies with respect to escrow deposits and payments, if such are required, for which customary arrangements for repayment thereof have not been made or which the

20

Seller expects not to be cured, and no escrow deposits or payments of other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note.

(ee)    Such Mortgage Loan does not have a shared appreciation feature or other contingent interest feature.

(ff)    No statement, report, or other document constituting a part of the Mortgage File contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

(gg)    The Mortgagor has received all disclosure materials, if any, required by applicable law with respect to the making of each Mortgage Loan and the Mortgagor has executed one or more statements acknowledging such receipt.

(hh)    The appraisal report with respect to the Mortgaged Property contained in the Mortgage File was signed prior to the approval of the application for such Mortgage Loan by a qualified appraiser, duly appointed by the originator of such Mortgage Loan, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of such application and otherwise meets the requirements of the Fannie Mae Guides (MBS Special Servicing Option) or the Freddie Mac Guide. Each appraisal was made in accordance with the relevant provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and is on a form acceptable to Fannie Mae or Freddie Mac.

(ii)    None of the Mortgage Loans are (a) subject to, covered by or in violation of the Home Ownership and Equity Protection Act of 1994 ("HOEPA") or (b) classified as "high cost," "covered," "high risk home", "high-rate, high-fee", "threshold," or "predatory" loans under HOEPA or any other applicable state, federal or local law, including any predatory or abusive lending laws (or similarly classified loans using different terminology under a law imposing heightened scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees) or (c) in violation of any state law or ordinance comparable to HOEPA.

(jj)    The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage.

(kk)    No Mortgage Loan contains provisions pursuant to which Monthly Payments are (a) paid or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor, or anyone on behalf of the Mortgagor, (b) paid by any source other than the Mortgagor or (c) except any Mortgage Loan identified by Seller as a Buydown Loan on the UBS Website, contains any other similar provisions which may constitute a "buydown" provision. The Mortgage Loan is not a graduated payment Mortgage Loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature.

21

[TPW: NYLEGAL:324116.3] 19356-00388  04/07/2004 5:08 PM

(ll)    The Seller has no knowledge of any circumstances or condition with respect to the Mortgaged Property, the Mortgagor, the Mortgagor's credit standing or the Mortgage that can reasonably be expected to cause the Mortgage Loan to be an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value of the Mortgage Loan.

(mm)    No Mortgage Loan has a balloon payment feature.

(nn)    No Mortgage Loan which is a cash-out refinancing was originated in the State of Texas.

(oo)    Interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months.

(pp)    The Mortgaged Property is in compliance with all applicable environmental laws pertaining to environmental hazards including, without limitation, asbestos, and neither the Seller nor, to the Seller's knowledge, the related Mortgagor, has received any notice of any violation or potential violation of such law.

(qq)    No misrepresentation, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of any Person, including without limitation the Seller, any prior originator or servicer, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan;

(rr)    The related Mortgagor has not requested any relief allowed to such Mortgagor under the Servicemens' Civil Relief Act of 1940;

(ss)    Except as identified by Seller on the UBS Website, the Mortgage Loan is not subject to a prepayment penalty. For any Mortgage Loan originated prior to October 1, 2002 that is subject to a prepayment penalty, such prepayment penalty does not extend beyond five years after the date of origination. For any Mortgage Loan originated on or following October 1, 2002 that is subject to a prepayment penalty, such prepayment penalty does not extend beyond three years after the date of origination. Any such prepayment penalty is enforceable and was originated in compliance with all applicable federal, state, and local laws.

(tt)    With respect to each Mortgage Loan, the Seller has fully and accurately furnished complete information on the related borrower credit files on a monthly basis to Equifax, Experian and Trans Union Credit Information Company, in accordance with the Fair Credit Reporting Act and its implementing regulations.

(uu)    The Mortgaged Property is lawfully occupied under applicable law, and all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities.

22

(vv)    Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1).

(ww)    The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA Patriot Act of 2001 (collectively, the "Anti-Money Laundering Laws"); the Seller has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws, has conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable Mortgagor and the origin of the assets used by the said Mortgagor to purchase the property in question, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws. No Mortgage Loan is subject to nullification pursuant to Executive Order 13224 (the "Executive Order") or the regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury (the "OFAC Regulations") or in violation of the Executive Order or the OFAC Regulations, and no Mortgagor is subject to the provisions of such Executive Order or the OFAC Regulations nor listed as a "blocked person" for purposes of the OFAC Regulations.

(xx)    No predatory or deceptive lending practices, including but not limited to, the extension of credit to the applicable Mortgagor without regard for said Mortgagor's ability to repay the Mortgage Loan and the extension of credit to said Mortgagor which has no apparent benefit to said Mortgagor, were employed by the originator of the Mortgage Loan in connection with the origination of the Mortgage Loan. Each Mortgage Loan is in compliance with the anti-predatory lending eligibility for purchase requirements of the Fannie Mae Guides.

(yy)    No Mortgage Loan is a "High Cost Home Loan" as defined in the Georgia Fair Lending Act, as amended (the "Georgia Act") or the New York Banking Law 6-1. No Mortgage Loan secured by property or located in the State of Georgia was originated (or modified) on or after October 1, 2002 through and including March 6, 2003.

(zz)    No Mortgage Loan (a) is secured by property located in the State of New York; (b) had an unpaid principal balance at origination of $300,000 or less, and (c) has an application date on or after April 1, 2003, the terms of which Mortgage Loan equal or exceed either the APR or the points and fees threshold for "high-cost home loans," as defined in Section 6-L of the New York State Banking Law.

(aaa)    No Mortgagor was encouraged or required to select a Mortgage Loan product offered by the Mortgage Loan's originator which is a higher cost product designed for less creditworthy borrowers, unless at the time of the Mortgage Loan's origination, such Mortgagor did not qualify taking into account credit history and debt to income ratios for a lower cost credit product then offered by the Mortgage Loan's originator or any affiliate of the Mortgage Loan's originator. If, at the time of loan application, the Mortgagor may have qualified for a lower cost credit product then offered by any mortgage lending affiliate of the Mortgage Loan's originator, the Mortgage Loan's originator referred the Mortgagor's application to such affiliate for underwriting consideration.

23

(bbb)    The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles which relate the Mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension.    Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan.

(ccc)    All fees and charges (including finance charges) and whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each Loan have been disclosed in writing to the Mortgagor in accordance with applicable state and federal law and regulation.

(ddd)    With respect to each Co-op Loan, the related Mortgage is a valid, enforceable and subsisting first security interest on the related cooperative shares securing the related cooperative note, subject only to (a) liens of the cooperative for unpaid assessments representing the Mortgagor's pro rata share of the cooperative's payments for its blanket mortgage, current and future real property taxes, insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Agreement. There are no liens against or security interest in the cooperative shares relating to each Co-op Loan (except for unpaid maintenance, assessments and other amounts owed to the related cooperative which individually or in the aggregate will not have a material adverse effect on such Co-op Loan), which have priority over the Seller's security interest in such cooperative shares.

(eee)    With respect to each Co-op Loan, a search for filings of financing statements has been made by a company competent to make the same, which company is acceptable to Fannie Mae or Freddie Mac and is qualified to do business in the jurisdiction where the cooperative unit is located, and such search has not found anything which would materially and adversely affect the Co-op Loan.

(fff)    With respect to each Co-op Loan, the related cooperative corporation that owns title to the related cooperative apartment building is a "cooperative housing corporation" within the meaning of Section 216 of the Code, and is in material compliance with applicable federal, state and local laws which, if not complied with, could have a material adverse effect on the Mortgaged Property.

(ggg)    With respect to each Co-op Loan, there is no prohibition against pledging the shares of the cooperative corporation or assigning the Co-op Lease.

(hhh)    All points and fees related to each Mortgage Loan were disclosed in writing to the Mortgagor in accordance with applicable state and federal law regulation.    Except in the case of a Mortgage Loan in an original principal amount of less than $60,000 which would have resulted in an unprofitable origination, no Mortgagor was charged "points and fees" (whether or not financed) in an amount greater than 5% of the principal amount of such Mortgage Loan, such 5% limitation is calculated

24

in accordance with Fannie Mae's anti-predatory lending requirements as set forth in the Fannie Mae Selling Guide.

(ii)   With respect to each Buydown Loan:

      (i)   On or before the date of origination of such Mortgage Loan, the Seller and the Mortgagor, or the Seller, the Mortgagor and the seller of the Mortgaged Property or a third party entered into a Buydown Agreement. The Buydown Agreement provides that the seller of the Mortgaged Property (or third party) shall deliver to the Seller Buydown Funds in an amount equal to the aggregate undiscounted amount of payments that, when added to the amount the Mortgagor on such Mortgage Loan is obligated to pay on each Due Date in accordance with the terms of the Buydown Agreement, is equal to the full scheduled Monthly Payment due on such Mortgage Loan;

      (ii)   The Mortgage and the Note reflect the permanent payment terms rather than the payment terms of the Buydown Agreement. The Buydown Agreement provides for the payment by the Mortgagor of the full amount of the Monthly Payment on any Due Date that the Buydown Funds are not available. The Buydown Funds were not used to reduce the original principal balance of the Mortgage Loan or to increase the Appraised Value of the Mortgaged Property when calculating the LTV for purposes of this Agreement and, if the Buydown Funds were provided by the Seller and if required under Fannie Mae and Freddie Mac guidelines, the terms of the Buydown Agreement were disclosed to the appraiser of the Mortgaged Property;

      (iii)   The Buydown Funds may not be refunded to the Mortgagor unless the Mortgagor makes a principal payment for the outstanding balance of the related Mortgage Loan; and

      (iv)   As of the date of origination of the Mortgage Loan, the provisions of the related Buydown Agreement complied with the requirements of Fannie Mae and Freddie Mac regarding buydown agreements.

(jjj)   No Mortgage Loan is a "High Cost Home Loan" as defined in the Arkansas Home Loan Protection Act effective July 16, 2003 (Act 1340 or 2003).

(kkk)   No Mortgage Loan is a "High Cost Home Loan" as defined in the Kentucky high-cost loan statute effective June 24, 2003 (Ky. Rev. Stat. Section 360.100).

(lll)   No Mortgage Loan secured by property located in the State of Nevada is a "home loan" as defined in the Nevada Assembly Bill No. 284.

25

(mmm) No Mortgage Loan originated in the City of Oakland is subject to the City of Oakland, California Ordinance 12361, (the "Ordinance") as a home loan.

(nnn) No Mortgage Loan is a subsection 10 mortgage under the Oklahoma Home Ownership and Equity Protection Act.

(ooo) No Mortgage Loan is a "High-Risk Home Loan" as defined in the Illinois High-Risk Home Loan Act effective January 1, 2004 (815 Ill. Comp. Stat. 137/1 et seq.).

(ppp) No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann. §§ 58-21A-1 et seq.).

(qqq) No Mortgage Loan is a "High-Cost Home Loan" under the New Jersey Home Ownership Security Act of 2002 (the "NJ Act"); and each Mortgage Loan subject to the NJ Act is considered under the NJ Act as, either, a (1) purchase money Home Loan, (2) purchase money Covered Loan, or (3) a rate/term refinance Home Loan.

(rrr) No Mortgage Loan originated in the city of Los Angeles, California on or after the effective date of the Los Angeles, California anti-predatory lending ordinance is a "high-cost refinance home loan" under such ordinance.

(sss) No Mortgage Loan that is secured by property located within the State of Maine meets the definition of a (i) "high-rate, high-fee" mortgage loan under Article VIII, Title 9-A of the Maine Consumer Credit Code or (ii) "High-Cost Home Loan" as defined under the Maine House Bill 383 L.D. 494, effective as of September 13, 2003.

(ttt) No Mortgagor agreed to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction.

**Section 3.2    Representations of Seller as of the Funding Date**

Seller hereby represents and warrants to Purchaser as of each Funding Date:

(a) Seller is a corporation duly organized, validly existing, and in good standing under the laws of the state of its formation, and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in the states where the Mortgaged Properties are located if the laws of such states require licensing or qualification in order to conduct business of the type conducted by Seller and to the extent necessary to ensure the enforceability of each Mortgage Loan in accordance with this Agreement; Seller has the corporate power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, to enter into, execute, and deliver this Agreement and all documents and instruments executed and delivered pursuant hereto and to perform its obligations in accordance therewith; the execution, delivery, and performance of this Agreement by Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligations of Seller; and all requisite corporate

26

action has been taken by Seller to make this Agreement valid and binding upon Seller in accordance with its terms.

(b)    No consent, approval, authorization, or order of any court or governmental agency or body relating to the transactions contemplated by this Agreement and the transfer of legal title to the Mortgage Loans to Purchaser, is required as to Seller or, if required, such consent, approval, authorization, or order has been or will, prior to the Funding Date, be obtained except for any recordations of Assignments of Mortgages to or for the benefit of Purchaser pursuant to this Agreement. No licenses or approvals obtained by Seller have been suspended or revoked by any court, administrative agency, arbitrator or governmental body and no proceedings are pending which might result in such suspension or revocation.

(c)    The consummation of the transactions contemplated by this Agreement, including, without limitation, the transfer and assignment of the Mortgage Loans to or for the benefit of Purchaser pursuant to this Agreement and the fulfillment of or compliance with the terms and conditions of this Agreement, are in the ordinary course of business of Seller, are not subject to the bulk transfer or any similar statutory provision, and will not result in the breach of any term or provision of the articles of incorporation or bylaws of Seller or result in the breach of any term or provision of, or conflict with or constitute a default under, or result in the acceleration of any obligation under, any agreement, indenture, Mortgage Loan or credit agreement, or other instrument to which Seller or its property is subject, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Seller or its property is subject.

(d)    There is no action, suit, proceeding or investigation pending or threatened against Seller which, either in any one instance or in the aggregate would be reasonably likely to result in any material impairment of the right or ability of Seller to carry on its business substantially as now conducted, or which would create any material liability for Seller, or which would draw into question the validity of this Agreement, or the Mortgage Loans, or of any action taken or to be taken in connection with the obligations of Seller contemplated herein or therein, including but not limited to the sale of the Mortgage Loans, or which would be likely to impair materially the ability of Seller to perform its obligations hereunder or thereunder.

(e)    Seller is a HUD approved mortgagee pursuant to Section 203 of the National Housing Act. No event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with HUD eligibility requirements or which would require notification to HUD.

(f)    Seller does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement.  Seller is solvent, and the sale of the Mortgage Loans will not cause Seller to become insolvent.  The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of Seller's creditors.

27

(g)     Seller is not in default with respect to any order, judgment, writ, injunction or decree of any court or any order, demand or regulation of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or otherwise) or operations of Seller or its properties or might have consequences that would affect its performance hereunder.

(h)     The origination, servicing and collection practices used by the Seller and any prior originator or servicer with respect to such Mortgage Loan have been in all material respects legal, proper, prudent and customary in the mortgage origination and servicing business.  The servicing and collection practices used by the Seller and any prior servicer with respect to such Mortgage Loan have been in all material respects in compliance with the Fannie Mae Guide.

(i)     The consideration received by the Seller upon the sale of the Mortgage Loans constitutes fair consideration and reasonably equivalent value for such Mortgage Loan.

## Section 3.3     Repurchase and Substitution

(a)     It is understood and agreed that the representations and warranties set forth in Sections 3.1 and 3.2 shall survive the sale of the Mortgage Loans to Purchaser and shall inure to the benefit of Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination of any Mortgage File.

(b)     Upon discovery by Seller or Purchaser of a breach of any of the representations and warranties set forth in Sections 3.1 or 3.2 that materially and adversely affects the value of any Mortgage Loan or the interest of Purchaser in any Mortgage Loan (or, in the case of the representations and warranties set forth in Section 3.2, the value of the Mortgage Loans or the interest of Purchaser in the Mortgage Loans), the party discovering such breach shall give prompt written notice to the other.  Seller shall use its best efforts to promptly cure in all material respects any such breach or defect within 60 days of the earlier of either discovery by or notice to Seller of such breach or defect, and, if such breach or defect cannot be or is not cured within such 60-day period, Seller shall, at the option of Purchaser, repurchase the affected Mortgage Loan and related Servicing Rights.  Any such repurchase shall be at the Repurchase Price.  Any such repurchase shall be accomplished by wire transfer of such funds to Purchaser.  It is understood by the parties hereto that a breach of the representations and warranties made in Sections 3.01 (k), (ii), (as), (tt), (yy) or (zz) will be deemed to materially and adversely affect the value of the related Mortgage Loan or the interest of the Purchaser therein.

(c)     In the event any principal prepayment-in-full is made by a Mortgagor on or prior to the last day of the month in which the third Monthly Payment due to the Purchaser occurs, the Seller shall remit to the Purchaser an amount equal to the excess, if any, of the Purchase Price Percentage over par multiplied by the amount of such principal prepayment-in-full.  Such remittance shall be made by the Seller to Purchaser no later than the third Business Day following receipt of such principal prepayment-in-full by the Seller or notice to Seller of the receipt of principal prepayment-in-full by Purchaser.

28

(d)     At the option of Purchaser, Seller shall repurchase any Mortgage Loan sold to Purchaser for which one of the first three scheduled Monthly Payments due to the Purchaser becomes delinquent (each, a "Delinquent Loan") or, provided that, in lieu of repurchase of a Delinquent Loan by Seller at Purchaser's request, Purchaser and Seller may mutually agree upon terms with regard to the indemnification of Purchaser by Seller for any and all costs, expenses, losses, etc. relating to a Delinquent Loan or Purchaser and Seller may agree to a substitution of another Mortgage Loan for any Delinquent Loan. Any such substituted Mortgage Loan will be subject to Purchaser acceptability. Such repurchase will be made at the Repurchase Price.

(e)     In addition to such cure, repurchase, and substitution obligations of Seller set forth in this Section 3.3, Seller shall indemnify and hold harmless Purchaser against any and all losses, liabilities, claims, costs or expenses (including attorney's fees) resulting from any claim, demand, defense, or assertion based on or grounded upon, or resulting from a breach of Seller's representations and warranties. It is understood and agreed that the obligations of Seller set forth in this Section 3.3 to cure or repurchase a defective Mortgage Loan and to indemnify Purchaser constitute the sole remedies available to Purchaser respecting a breach of the foregoing representations and warranties.

(f)     Any cause of action against Seller relating to or arising out of the breach of any representation and warranty made in Sections 3.1 and 3.2 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by Purchaser or notice thereof by Seller to Purchaser, (ii) failure by Seller to cure such breach or repurchase and (iii) demand upon Seller by Purchaser for all amounts payable in respect of such Mortgage Loan.

## ARTICLE IV

### MISCELLANEOUS

**Section 4.1     Indemnity**

Seller shall indemnify and hold harmless Purchaser and Purchaser's agents, employees and subcontractors against any and all losses, liabilities, claims, costs or expenses (including attorney's fees) against it and its agents, employees and subcontractors arising out of servicing of the Mortgage Loans whether hereunder or otherwise on or prior to the Funding Date. Purchaser will indemnify and hold harmless Seller and Seller's agents, employees and subcontractors against any and all losses, liabilities, claims, costs or expenses (including attorney's fees) against it and its agents, employees and subcontractors arising out of Purchaser's servicing of the Mortgage Loans after the Funding Date (unless related to or caused by Seller's servicing prior to the Funding Date). Upon discovery by any indemnified party of any fact which might result in the assertion of any right to indemnification hereunder, the party discovering such breach shall give prompt written notice to the others; provided, however, a failure to give notice shall affect the right to indemnification only if and only to the extent that it materially and adversely affects the rights of the indemnifying party.

29

[[PW: NYLEGAL:224116.2] 19356-00088  04/07/2004 5:68 PM]

### Section 4.2    Further Assurances

At any time, and from time to time hereafter, upon the reasonable request of Purchaser, and without payment of further consideration to Seller except for any reasonable out-of-pocket expenses, Seller shall do, execute, acknowledge and deliver, and shall cause to be done, executed, acknowledged and delivered, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and assurances as may be required in order to better assign, transfer, grant, convey, assure and confirm to Purchaser, or to collect and reduce to possession, any or all of the Mortgage Loans as provided for herein. Seller shall keep this Agreement in its official records.

### Section 4.3    Successors And Assigns

This Agreement shall bind and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assignees of any of them. Seller shall not assign this Agreement or any of its rights hereunder, nor delegate any material duty hereunder without the prior written consent of Purchaser, which such consent may be withheld in Purchaser's sole and absolute discretion. The Purchaser may assign this Agreement to any Person to whom any Mortgage Loan is transferred whether pursuant to a sale or financing and to any Person to whom the Servicing Rights or master servicing of any Mortgage Loan is sold or transferred. Upon any such assignment, the person to whom such assignment is made shall succeed to all rights and obligations of the Purchaser under this Agreement to the extent of the related Mortgage Loan or Mortgage Loans, and this Agreement, to the extent of the related Mortgage Loan or Mortgage Loans, shall be deemed to be a separate and distinct Agreement between the Seller and such Purchaser, and a separate and distinct Agreement between the Seller and each other Purchaser to the extent of the other related Mortgage Loan or Mortgage Loans. In the event that this Agreement is assigned to any Person to whom the Servicing Rights or master servicing of any Mortgage Loan is sold or transferred, the rights and benefits under this Agreement which inure to the Purchaser shall inure to the benefit of both the Person to whom such Mortgage Loan is transferred and the Person to whom the Servicing Rights or master servicing of the Mortgage Loan has been transferred.

### Section 4.4    Survival; Entire Agreement; Severability

All representations, warranties and agreements contained in this Agreement shall remain in full force and effect and shall survive delivery of the Mortgage Loans to Purchaser. This Agreement, between Purchaser and Seller contain the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersede all prior and contemporaneous agreements and understandings, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof. If any provision of this Agreement shall be prohibited or invalid under applicable law, the Agreement shall be ineffective only to such extent, without invalidating the remainder of this Agreement.

### Section 4.5    Amendment; Waivers

30

[TPW: NYLEGAL:224316.2] :9356-00084 04/07/2004 5:05 PM

Any change, waiver, discharge or termination may only be effected in writing, signed by the party against which enforcement of such change, waiver, discharge or termination is sought. A waiver of any term, condition or obligation under this Agreement by any party shall not be construed as a waiver by such party of any other term, condition or obligation under this Agreement, nor shall a waiver of any term, condition or obligation constitute a waiver of a subsequent breach of the same term, condition or obligation or of any right consequent thereon.

## Section 4.6    Counterparts; Headings

This Agreement may be executed in counterparts, each of which will be an original, but which together shall constitute one and the same agreement. The originally executed agreement may be delivered by facsimile with the original executed document to follow. Headings are for reference only, and will not affect the interpretation or meaning of any provision of this Agreement.

## Section 4.7    Notices And Wire Instructions

All notices or other communications which are required or permitted hereunder shall be in writing and shall be sufficient if delivered personally or sent by registered or certified mail, postage prepaid, or by overnight courier, telex or telecopy addressed as follows:

If to Seller on Servicing Related Issues:

> County Trust Mortgage Bankers Corp.
> 11430 N. Kendall Drive, Suite 300
> Miami, Florida 33176
> Attn:        Hector Chomat
> Phone:       (305) 279-4445, Ext. 104
> Facsimile:
> E-mail:      hchomat@countytrust.com

If to Seller on all other Issues:

> County Trust Mortgage Bankers Corp.
> 11430 N. Kendall Drive, Suite 300
> Miami, Florida 33176
> Attn:        Hector Chomat
> Phone:       (305) 279-4445, Ext. 104
> Facsimile:
> E-mail:      hchomat@countytrust.com

If to Purchaser for Servicing Transfer Related Issues:

> GMAC Mortgage Corporation

31

3451 Hammond Avenue
Waterloo, IA 50702
Mr. Wes Howland, Director-Servicing Sales and Acquisitions
Phone:        (319) 236-5261
Facsimile:    (319) 236-7650

If to Purchaser on all other Issues:

GMAC Mortgage Corporation
100 Witmer Road
Horsham, PA 19044
Mr. William Petersohn
Phone:        (215) 682-3109
Facsimile:    (215) 682-1353

Any party may change the address to which notice or other communication to it are to be delivered or mailed by written notice to the other party hereto. Any notice or communication hereunder shall be deemed to have been delivered on the date received at the premises of the addressee (as evidenced, in the case of registered or certified mail or overnight courier, by the date noted on the return receipt).

Section 4.8    Governing Law

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE AND PERFORMED IN THE STATE OF NEW YORK AND SHALL BE INTERPRETED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES OF SUCH STATE.

Section 4.9    Reconstitution

(a)    The Seller acknowledges and the Purchaser agrees that with respect to some or all of the Mortgage Loans, the Purchaser may effect either:

(i)    one or more sales of the Mortgage Loans as whole loan transfers (each, a "Whole Loan Transfer"); and/or

(ii)    one or more sales of the Mortgage Loans as pass-through transfers (each, a "Pass-Through Transfer").

(b)    With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, the Seller agrees:

32

[TFW: NYLEGAL:2243102] 19356-00088  04/07/2004 5:08 PM

(i)    to cooperate fully with the Purchaser and any prospective purchaser with respect to all reasonable requests and reasonable due diligence procedures and shall provide information reasonably requested by the Purchaser or by such prospective purchasers;

(ii)    to execute all agreements required to be executed by the Seller in connection with such Whole Loan Transfer or Pass-Through Transfer provided that such agreements are in form and substance reasonably acceptable to Seller, provided that such provisions create no greater obligation or cost than otherwise set forth in this Agreement and Seller is given an opportunity to review and reasonably negotiate in good faith the content of such documents;

(iii)    to deliver to the Purchaser and to any Person designated by the Purchaser for inclusion in any prospectus or other offering material such publicly available information regarding the Seller, its financial condition and any additional information reasonably requested by the Purchaser, and to indemnify the Purchaser and its affiliates for material misstatements contained in such information, and such statements and audit letters of reputable, certified public accountants pertaining to information provided by the Seller as shall be reasonably requested by the Purchaser;

(iv)    to deliver to the Purchaser, and to any Person designated by the Purchaser, such in-house opinions of counsel in a form reasonably acceptable to the Purchaser as are customarily delivered by servicers and reasonably determined by the Purchaser to be necessary in connection with Whole Loan Transfers or Pass-Through Transfers; and

(v)    with respect to any Whole Loan Transfer or Pass-Through Transfer, the Seller shall make the representations and warranties regarding the Seller as of the date of the Whole Loan Transfer or Pass-Through Transfer and the Mortgage Loans as of the Funding Date.

The third party costs incurred by Seller in connection with compliance with this Section 4.9, including but not limited to the costs of opinions of outside special counsel that may be required for a Whole Loan Transfer or Pass-Through Transfer, shall be the responsibility of the Purchaser.

**Section 4.10    Amendments to This Agreement on UBS Website**

The Seller and the Purchaser each hereby acknowledges and agrees that this Agreement (including the representations and warranties set forth herein) and the UBS Guide may be modified, amended and supplemented from time to time by UBS in its sole discretion, pursuant to a notice of any such change on the UBS Website with a written or electronic notice to the Purchaser of any such change that materially and adversely affects the Purchaser's rights or obligations hereunder. The Seller

33

hereby covenants that so long as transactions are pending or contemplated under this Agreement that the Seller shall monitor the UBS Website for any changes to the documents used in the UBS Website Program. The Seller and the Purchaser each hereby agrees that if any commitment to sell a Mortgage Loan under this Agreement is made subsequent to any such notice on the UBS Website, the sale of such Mortgage Loan under the Agreement shall be subject to the changes set forth in such posting.

### Section 4.11    Electronic Execution

The Seller and the Purchaser hereto agree that each document required to be executed under this Agreement including, without limitation, the Assignment, Assumption and Recognition Agreement required to be delivered on the Funding Dates shall be executed by the Seller and the Purchaser Electronically. The Seller and the Purchaser hereby agree that any such electronic executions shall be conclusive evidence of such party's intent to execute such document, shall be binding on such party and that the other party hereto (in addition to each other third party hereto, if any) is relying on the enforceability of such execution.

### Section 4.12    Financial Statements

The Seller understands that in connection with the Purchaser's marketing of the Mortgage Loans, the Purchaser shall make available to prospective purchasers the Seller's financial statements for the most recently completed three fiscal years respecting which such statements are available. The Seller also shall make available any comparable interim statements to the extent any such statements have been prepared by the Seller (and are available upon request to members or stockholders of the Seller or the public at large). The Seller, if it has not already done so, agrees to furnish promptly to the Purchaser copies of the statements specified above. The Seller also shall make available information on its servicing performance with respect to loans serviced for others, including delinquency ratios.

The Seller also agrees to allow access to knowledgeable financial, accounting, origination and servicing officers of the Seller for the purpose of answering questions asked by any prospective purchaser regarding recent developments affecting the Seller, its loan origination or servicing practices or the financial statements of the Seller.

[Signatures Follow]

34

IN WITNESS WHEREOF, the parties hereto have executed this Master Mortgage Loan Sale Agreement effective the day and year first above written.

COUNTY TRUST MORTGAGE BANKERS CORP.
(Seller)

By: _____

Name: _Hector Chaoset_

Title: _President_

GMAC MORTGAGE CORPORATION
(Purchaser)

By: _____

Name: _____

Title: _____

35

**EXHIBIT A**

**DOCUMENTS REQUIRED FOR FUNDING**

a.  The original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of "Blank" without recourse".

b.  The original of any guarantee executed in connection with the Mortgage Note (if any).

c.  The original Mortgage or Deed of Trust, together with any riders or addenda thereto, with evidence of recording thereon or a certified true and correct copy of the Mortgage or Deed of Trust sent for recordation.

d.  The originals of all assumption, modification, consolidation or extension agreements, as applicable, with evidence of recording thereon, or a certified true and correct copy of each applicable document sent for recordation.

e.  Original Assignment of the Mortgage or Deed of Trust endorsed to blank.

f.  Original intervening Assignment(s) or one certified true and correct copy of any intervening Assignment(s) sent for recordation.

g.  Original or certified true and correct copy of the ALTA title policy, commitment binder or equivalent.

h.  With respect to a Co-op Loan: (i) a copy of the Co-op Lease and the assignment of such Co-op Lease to the originator of the Loan, with all intervening assignments showing a complete chain of title and an assignment thereof by Seller; (ii) he stock certificate together with an undated stock power relating to such stock certificate executed in blank; (iii) the recognition agreement in substantially the same form as standard a "AZTECH" form; (iv) copies of the financial statement filed by the originator as secured party and, if applicable, a filed UCC-3 Assignment of the subject security interest showing a complete chain of title, together with an executed UCC-3 Assignment of such security interest by the Seller in a form sufficient for filing.

i.  The original Primary Mortgage Insurance Policy or certificate of insurance, where required pursuant to the Agreement.

j.  Original of the final FNMA 1003.

k.  Original or certified true and correct copy of the HUD-1 settlement statement.

l.  For each Mortgage Loan which is secured by a residential long-term lease, a copy of the lease with evidence of recording indicated thereon, or, if the lease is in the process of being recorded, a photocopy of the lease, certified by an officer of the respective prior owner of such Mortgage Loan or by the applicable title insurance company, closing/settlement/escrow agent or company or closing attorney to be a true and correct copy of the lease transmitted for recordation.

[TPW: NYLEGAL:2243162] 19356-00088  04/07/2004 5:08 PM

m.  Any security agreement, chattel mortgage or equivalent executed in connection with the Mortgage.

n.  For each Mortgage Loan secured by Co-op Shares, the original or copy of the following documents or instruments:

    (i)  The original stock certificate;

    (ii)  The original stock power executed in blank;

    (iii)  The original loan security agreement;

    (iv)  The original executed proprietary lease;

    (v)  A copy of the assignment of the proprietary lease from the seller to the borrower;

    (vi)  A copy of the assignment of the proprietary lease from the borrower to the lender;

    (vii)  A copy of the acceptance and assumption of proprietary lease;

    (viii)  The original executed recognition agreement;

    (ix)  The original executed assignment of recognition agreement;

    (x)  A copy of the consent of corporation;

    (xi)  A copy of the estoppel letter;

    (xii)  A copy of the executed UCC-1 financing statement with evidence of recording thereon; and

    (xiii)  The original executed UCC-3 or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken title from the mortgagee to the Seller with evidence of recording thereon (or in a form suitable for recordation).

o.  The original hazard insurance policy or evidence thereof.

p.  Evidence of Flood Insurance, if applicable.

q.  Flood zone determination or third party flood certification, if applicable.

r.  Verification of employment and income.

s.  Verification of acceptable evidence of source and amount of down payment.

t.  Credit report on the Mortgagor.

u.  Original residential appraisal report.

[TFW:NYLEGAL:924316.2] 19358-00088  04/07/2004 5:01 PM

v.    Photograph of the Mortgaged Property.

w.    Survey of the Mortgaged Property, if required by the title, Seller or applicable law.

x.    Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e. map or plat, restrictions, easements, sewer agreements, home association declarations, etc.

y.    All required disclosure statements including but not limited to Truth-in-Lending disclosures and notice of right to cancel.

z.    A mortgage insurance sale notice.

aa.   If available, termite report, structural engineer's report, water portability and septic certification.

bb.   Sales contract, if applicable.

cc.   Evidence of payment of taxes and insurance premiums, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage loan file and which are required to document the Mortgage Loan or to service the Mortgage Loan.

dd.   Amortization schedule, if available.

ee.   Payment history for any Mortgage Loan that has been closed for more than 90 days.

ff.   Original power of attorney, if applicable.

gg.   Original name affidavit, if applicable.

hh.   Original signature certification, if applicable.

ii.   Original lost instrument bond and certified true and correct copy of the original Mortgage Note, with original endorsements, if applicable.

jj.   Original of buydown agreement, if applicable.

kk.   Any additional documentation Buyer may request from time to time.

<u>EXHIBIT B</u>

<u>FORM OF SELLER'S OFFICER'S CERTIFICATE</u>

I, _Hector Charet_, hereby certify that I am the duly elected _Officer_ of COUNTY TRUST MORTGAGE BANKERS CORP., a Florida corporation (the "Company"), and further certify, on behalf of the Company as follows:

1.      Attached hereto as Attachment I are a true and correct copy of the Certificate of Incorporation and by-laws of the Company as are in full force and effect on the date hereof.

2.      No proceedings looking toward merger, liquidation, dissolution or bankruptcy of the Company are pending or contemplated.

3.      Each person who, as an officer or attorney-in-fact of the Company, signed (a) the Master Mortgage Loan Sale Agreement (the "Sale Agreement"), dated as of April 7, 2004, by and between the Company and GMAC Mortgage Corporation (the "Purchaser"); and (b) any other document delivered prior hereto or on the date hereof in connection with the sale and servicing of the Mortgage Loans in accordance with the Sale Agreement was, at the respective times of such signing and delivery, and is as of the date hereof, duly elected or appointed, qualified and acting as such officer or attorney-in-fact, and the signatures of such persons appearing on such documents are their genuine signatures.

4.      Attached hereto as Attachment II is a true and correct copy of the resolutions duly adopted by the board of directors of the Company on [Date of Resolutions] (the "Resolutions") with respect to the authorization and approval of the sale and servicing of the Mortgage Loans; said Resolutions have not been amended, modified, annulled or revoked and are in full force and effect on the date hereof.

5.      Attached hereto as Attachment III is a Certificate of Good Standing of the Company dated [Date of Good Standing Cert]. No event has occurred since [Date of Good Standing Cert] which has affected the good standing of the Company under the laws of the State of FLORIDA.

6.      All of the representations and warranties of the Company contained in Section 3.1 and 3.2 of the Sale Agreement were true and correct in all material respects as of the date of the Sale Agreement and are true and correct in all material respects as of the date hereof.

7.      The Company has performed all of its duties and has satisfied all the material conditions on its part to be performed or satisfied prior to the Funding Date pursuant to the Sale Agreement.

[TPW NYLEGAL:224316.2] 19336-00088  04/07/2004 5:08 PM

All capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Sale Agreement.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of the Company.

Dated: _4-21-04_

[Seal]

COUNTY TRUST MORTGAGE BANKERS CORP.
(Company)

By: _____
Name: _President_
Title: _Hector Chomat_

I, _Elsa M. Chomat_ Secretary of the Company, hereby certify that _Hector Chomat_ is the duly elected, qualified and acting Vice President of the Company and that the signature appearing above is his genuine signature.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated: _4-21_, 200 _4_

[Seal]

COUNTY TRUST MORTGAGE BANKERS CORP.
(Company)

By: _____
Name: _ELSA M. CHOMAT_
Title: _SECRETARY_

[TPW_NYLEGAL:224316.2] 19356-00088  4/03/2004 5:08 PM

<u>EXHIBIT C</u>

<u>FORM OF SECURITY RELEASE CERTIFICATION</u>

_____, hereby relinquishes any and all right, title and interest it may have in and to the Mortgage Loan(s) described in Exhibit A attached hereto upon purchase thereof by GMAC Mortgage Corporation from the Company named below pursuant to that certain Master Mortgage Loan Sale Agreement, dated as of April 7, 2004, as of the date and time of receipt by _____ of $_____ for such Mortgage Loan(s) (the "Date and Time of Sale"), and certifies that all notes, mortgages, assignments and other documents in its possession relating to such Mortgage Loans have been delivered and released to the Company named below or its designees as of the Date and Time of Sale.

Name and Address of Financial Institution

_____
(Name)

_____  __
(Address)

By:_____
Name:_____
Title:_____

II.    Certification of Release

The Company named below hereby certifies to GMAC Mortgage Corporation that, as of the Date and Time of Sale of the above mentioned Mortgage Loans to GMAC Mortgage Corporation, the security interests in the Mortgage Loans released by the above named corporation comprise all security interests relating to or affecting any and all such Mortgage Loans. The Company warrants that, as of such time, there are and will be no other security interests affecting any or all of such Mortgage Loans.

_____ Company

By:_____
Name:_____
Title:_____

EXHIBIT D

TEXT OF ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT

ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT

This Assignment, Assumption and Recognition Agreement (the "Agreement") is made and entered into as of [Closing Date], (the "Closing Date"), among GMAC Mortgage Corporation, (the "Assignor"), UBS Real Estate Securities Inc (the "Assignee"), and County Trust Mortgage Bankers Corp. (the "Seller"). Any capitalized term used and not otherwise defined herein shall have the meaning assigned to such term in the Purchase Agreement (as defined below).

In consideration of the mutual promises and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Assignments and Assumptions

The Assignor hereby grants, transfers and assigns to the Assignee (a) all of its right, title and interest in and to the Mortgage Loan(s), and (b) all of its right, title and interest as "Purchaser" in, to and under the Purchase Agreement with respect to the Mortgage Loan(s). Notwithstanding anything to the contrary contained herein, the Assignor is not assigning to the Assignee any of the Servicing Rights, which are retained by the Assignor, including but not limited to the following:

a) any of the Servicing Rights relating to the Mortgage Loan(s), as the term "Servicing Rights" is defined in the Purchase Agreement and further described herein;

b) all rights, benefits and obligations accorded the owner of the Servicing Rights under the Purchase Agreement (including its indemnification obligations pursuant to Section 4.01 of the Purchase Agreement);

Except as is otherwise expressly provided herein, the Assignor makes no representations, warranties or covenants to the Assignee and the Assignee acknowledges that the Assignor has no obligations to the Assignee under the terms of the Purchase Agreement, or otherwise relating to the transaction contemplated herein (including, but not limited to, any obligation to repurchase any of the Mortgage Loan(s) or to indemnify the Assignee), and that all such obligations are retained by the Seller.

The Seller and Assignor each acknowledges and agrees that upon execution of this Agreement, Assignee shall become the "Purchaser" under the Purchase Agreement, and all representations, warranties and covenants by the "Seller" to the "Purchaser" under such Purchase Agreement including, but not limited to, the rights to require repurchase of any Mortgage Loan(s) and to receive indemnification, shall accrue to Assignee by virtue of this Agreement.

4.  Servicing of the Mortgage Loan(s).  Assignor shall service the Mortgage Loan(s) in accordance with that certain Servicing Agreement among Assignor and Assignee dated as of November 1, 2001.

5.  Status of Purchase Agreement.  The Seller and Assignor each represents and warrants that (a) the Purchase Agreement with respect to the Mortgage Loan(s) is in full force and effect as of the date

[TPW: NYLEGAL:224116.2] 19356-00088  04/07/2004 5:08 PM