UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS REAL ESTATE SECURITIES INC.,<br><br>                          Plaintiff,<br><br>  -against-<br><br>COUNTY TRUST MORTGAGE BANKERS CORP.,<br><br>                          Defendant. | Case No.: 07 Civ. 3700 (SAS) (GWG)<br><br>ECF Case<br><br>**DECLARATION OF CHRISTOPHER G. SCHMIDT IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DAMAGES** |

        CHRISTOPHER G. SCHMIDT hereby declares, under penalty of perjury:

        1.    I am an Executive Director of plaintiff UBS Real Estate Securities Inc. ("UBS"). I make this declaration in support of UBS's motion for summary judgment as to damages in the amount of $792,383.51 (the "Motion") against defendant County Trust Mortgage Bankers Corp. ("County Trust"). Unless otherwise indicated, I have personal knowledge of the facts set forth herein.

        2.    As set forth more fully in the Complaint,[1] on or about January 30, 2005, UBS and County Trust entered into the Purchase Agreement, whereby County Trust agreed to sell, and UBS agreed to purchase, from time to time, certain mortgage loans pursuant to the Purchase Agreement's terms. Relevant excerpts of the Purchase Agreement are attached to the Sher Declaration as Exhibit B.

        3.    Pursuant to the Purchase Agreement, County Trust agreed to repurchase from UBS, at the contractually specified "Repurchase Price," any mortgage loan purchased by UBS that experienced an early payment default ("EPD").

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed to such term in the Declaration of Jeremy M. Sher (the "Sher Declaration") also submitted in support of the Motion.

4. Nine loans purchased by UBS from County Trust experienced early payment defaults. County Trust failed to honor its contractual obligation under the Purchase Agreement to repurchase these nine loans.

5. As to four of these nine loans, UBS did not suffer damages, either because UBS was able to re-sell the loans without a loss or because the borrower paid the loan in full. UBS suffered damages from County Trust's breach of contract as to the remaining five loans (the "EPD Mortgage Loans").

6. UBS's damages consist of the contractual Repurchase Price, as defined in the Purchase Agreement, for each EPD Mortgage Loan that County Trust failed to repurchase, less the actual or estimated proceeds that UBS has realized or will realize from selling or liquidating those EPD Mortgage Loans.

7. For purposes relevant to this Motion, the Repurchase Price of a loan can be stated as the sum of (a) the unpaid principal balance of the loan, (b) accrued interest, (c) expenses advanced with respect to the loan, and (d) the "premium" (or amount over par) that UBS paid County Trust with respect to the loan.

8. The Excel spreadsheet attached as Exhibit A hereto (the "Damages Spreadsheet") lists the Repurchase Price of each EPD Mortgage Loan. Each Repurchase Price is based on adding together the amounts set forth above. The column entitled "Unpaid Balance" contains the unpaid principal balances for each of the EPD Mortgage Loans. The column entitled "Accrued Interest" contains the unpaid accrued interest for the EPD Mortgage Loans through June 30, 2008. The columns entitled "Corporate Advances" and "Escrow Advances" contain the expenses UBS advanced for the EPD

Mortgage Loans. Finally, the column entitled "Purchase Price" contains the information necessary for the spreadsheet to compute the premiums for the EPD Mortgage Loans.[2]

9.  Thus, the "Repurchase Price" column of the Damages Spreadsheet hereto correctly states the Repurchase Price of each of the EPD Mortgage Loans.

10. The column entitled "Proceeds/Value" contains the actual or estimated proceeds that have been or will be realized from UBS's sale or liquidation of the EPD Mortgage Loans.

11. UBS sold two of the EPD Mortgage Loans (identified by UBS Loan ID numbers 777021609 and 777013706) in good faith, commercially reasonable sales. The proceeds UBS received from the sale of each of these EPD Mortgage Loans, $124,110.10 and $81,744.08, respectively, appear as the "Proceeds/Value" entries for these loans.

12. UBS foreclosed upon the properties securing the other three EPD Mortgage Loans (identified by UBS Loan ID numbers 334582213, 335338992, and 335338990).

13. UBS sold the property securing the EPD Mortgage Loan identified by UBS Loan ID number 334582213 in a good faith, commercially reasonable sale. The proceeds UBS received from the sale of this property, $203,317.30, appears in the "Proceeds/Value" entry for this loan.

14. UBS has attempted to sell the two other foreclosed properties (the "Foreclosed Properties"). Due to unfavorable market conditions, UBS has not been able

---

[2] Excel computes the premium by subtracting 1 (which is par) from the Purchase Price and multiplying that fractional result by the Original Balance shown.

to obtain a reasonable sale price for the Foreclosed Properties at this time and the Foreclosed Properties remain unsold.

15. UBS has estimated the sale prices of the Foreclosed Properties for the purpose of this Motion. These estimated sale prices appear as the "Proceeds/Value" entries for the corresponding EPD Mortgage Loans.

16. UBS's estimation of the sale price of each Foreclosed Property is an amount equal to 75% of the probable sale price given in a recent broker price opinion ("BPO") for that Foreclosed Property.

17. UBS uses BPOs in the normal course of business to determine a property's market value. A BPO provides a reasonably accurate estimate of the property's sale price on the open market.

18. It is the routine practice in this industry to estimate a property's post-foreclosure sale price as an amount equal to 75% of the property's BPO sale price. This formula accounts for the fact that the property is being sold after it has been foreclosed upon, which typically depresses the property's value and imposes costs upon the owner of the loan.

19. To obtain reasonably accurate estimates of the Foreclosed Properties' post-foreclosure sale prices, UBS multiplied each Foreclosed Property's BPO sale price by 75%.

20. UBS's damages as the result of County Trust's failure to repurchase an EPD Mortgage Loan are the difference between the Repurchase Price and the Proceeds/Value for that EPD Mortgage Loan. The result of subtracting the Proceeds/Value amount from the Repurchase Price of each EPD Mortgage Loan appears

in the column entitled "Damages." As shown on the Damages Spreadsheet, UBS's damages arising from the EPD Mortgage Loans it sold in good faith, commercially reasonable sales (identified by UBS Loan ID numbers 777021609 and 777013706) total $294,714.43. UBS's damages arising from the EPD Mortgage Loan for which UBS sold the underlying property in a good faith, commercially reasonable sale (identified by UBS Loan ID number 334582213) total $189,004.32. UBS's damages arising from the EPD Mortgage Loans secured by the Foreclosed Properties (identified by UBS Loan ID numbers 335338992 and 335338990) total $308,664.76.

21. As shown on the Damages Spreadsheet, the aggregate of UBS's breach of contract damages is $792,383.51. UBS respectfully requests an award of damages in this amount.

22. No part of the total requested judgment amount has been paid.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 8th day of August, 2008

_____
CHRISTOPHER G. SCHMIDT
EXECUTIVE DIRECTOR