Joel M. Miller (JM-2018)
Charles R. Jacob III (CJ-4143)
Jeremy M. Sher (JS-1422)
250 Park Avenue
New York, New York 10177
(212) 336-3500

*Attorneys for Plaintiff*
*UBS Real Estate Securities Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UBS REAL ESTATE SECURITIES INC.,

                     Plaintiff,

-against-

COUNTY TRUST MORTGAGE BANKERS CORP.,

                     Defendant.

Case No.: 07 CV 3700

JUDGE SCHEINDLIN

**COMPLAINT**



RECEIVED MAY 10 2007 U.S.D.C. S.D.N.Y. CASHIERS

    Plaintiff UBS Real Estate Securities Inc. ("UBS"), by its attorneys Miller & Wrubel P.C., as and for its Complaint against defendant alleges as follows:

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

#### The Parties

    1.    UBS is a corporation organized under the laws of the State of Delaware with its principal place of business at 1285 Avenue of the Americas, New York, New York 10019. UBS is engaged in the business of, inter alia, purchasing, trading and securitizing mortgages.

    2.    On information and belief, defendant County Trust Mortgage Bankers Corp. ("County Trust") is a corporation organized under the laws of the State of

Florida with its principal place of business at 11430 North Kendall Drive, Suite 300, Miami, Florida 33176. On further information and belief, County Trust is engaged in the business of, inter alia, originating and selling mortgages.

### Jurisdiction

3. UBS brings this action under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs, and the action is brought between citizens of different states. UBS is a citizen of Delaware and New York, and County Trust is a citizen of Florida.

4. County Trust is subject to personal jurisdiction in this Court because, as more fully set forth below, it transacted business in the State of New York and contracted to supply goods and services in the State of New York, and this action arises out of County Trust's business transactions and contracts to supply goods and services in the State of New York.

### Venue

5. This action is properly brought in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) and (c). Jurisdiction in this action is founded on diversity of citizenship and County Trust is a corporation subject to personal jurisdiction in this District.

### County Trust's Breach of the Purchase Agreement

**A. The Purchase Agreement**

6. UBS and County Trust entered into a Master Mortgage Loan Sale Agreement, dated as of January 30, 2005 (the "Purchase Agreement").

2

7.  In the Purchase Agreement, County Trust contracted to sell to UBS certain first lien residential Mortgage Loans (as defined in the Purchase Agreement), subject to the terms and conditions in the Purchase Agreement.

8.  Pursuant to § 3.3 of the Purchase Agreement, entitled "Repurchase and Substitution," County Trust agreed to repurchase Mortgage Loans from UBS in the event of certain delinquencies (as set forth below), or, at UBS' option, indemnify UBS as to any Early Payment Default Loans not repurchased. Section 3.3(d) of the Purchase Agreement provides as follows:

> At the option of Purchaser [UBS], Seller [County Trust] shall repurchase any Mortgage Loan sold to Purchaser for which one of the first three scheduled Monthly Payments due to the Purchaser becomes delinquent (each, a "Delinquent Loan") or, provided that, in lieu of repurchase of a Delinquent Loan by Seller at Purchaser's request, Purchaser and Seller may mutually agree upon terms with regard to the indemnification of Purchaser by Seller for any and all costs, expenses, losses, etc. relating to a Delinquent Loan .... Such repurchase will be made at the Repurchase Price [as defined].

9.  Thus, the Purchase Agreement expressly and unambiguously gave UBS the right to cause County Trust to repurchase, and imposed on County Trust an obligation to repurchase, at the Repurchase Price, any Early Payment Default Loans as to which UBS requested repurchase.

10. The Mortgage Loans listed on Exhibit A hereto are all Early Payment Default Loans as defined in the Purchase Agreement.

11. On several occasions, commencing as early as June 2006, and continuing through March 2007, UBS gave County Trust written notice of such Early Payment Default Loans and exercised UBS' option to require County Trust to repurchase

such Early Payment Default Loans, all in accordance with the terms of the Purchase Agreement.

12. UBS stood ready, willing and able, at all relevant times, to reconvey the Mortgage Loans on Exhibit A to County Trust.

13. UBS has fully performed all its obligations under and relating to the Purchase Agreement.

14. County Trust did not repurchase the Early Payment Default Loans listed on Exhibit A hereto as requested by UBS. Therefore, County Trust is in breach of its obligations under the Purchase Agreement.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract – Damages for Failure to Repurchase Early Payment Default Loans)

15. UBS repeats and realleges the allegations of paragraphs 1 - 14, above, as if fully set forth herein.

16. UBS is entitled, by means of an award of damages, to be put in the same position economically that they would have been in had County Trust performed its repurchase obligations under § 3.3(d) of the Purchase Agreement.

17. The aggregate Repurchase Price due and owing to UBS for the Early Payment Default Loans, as of April 5, 2007, was $2,325,575.73, no part of which has been paid despite due demand therefor.

18. The Court should enter a money judgment in favor of UBS and against County Trust in the amount of $2,325,575.73, plus interest at the statutory rate of 9% from the date(s) of breach until the date of judgment.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract – Declaration as to Mitigation of Losses)

19. UBS repeats and realleges the allegations of paragraphs 1 - 18, above, as if fully set forth herein.

20. UBS, as the non-breaching party, should not be put in a worse position with respect to loss mitigation than if County Trust had not breached the terms of the Purchase Agreement by its failure to repurchase.

21. Pursuant to pre-existing contractual arrangements with UBS, loss mitigation with respect to the Early Payment Default Loans is conducted by the Servicers, which service the Mortgage Loans in the ordinary course of business. UBS usually does not have a direct role in loss mitigation, as loss mitigation is contractually the responsibility of the Servicers.

22. The Servicers dispose of the properties underlying defaulted Mortgage Loans by means of foreclosures and/or sales conducted within certain guidelines that the Servicers maintain (the "Servicer Guidelines").

23. In addition, a secondary market known as the "scratch-and-dent" market exists, in which defaulted Mortgage Loans can be sold.

24. On information and belief, a controversy exists and is ripe for adjudication as to UBS' mitigation of losses because County Trust is disputing or will dispute whether UBS has mitigated its losses properly.

25. UBS is entitled to a declaration that County Trust has no defense relating to mitigation of damages so long as Early Payment Default Loans are (a) foreclosed on or sold by the Servicers according to the Servicer Guidelines or (b) sold by UBS in an arms-length transaction in the scratch-and-dent market.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Indemnification for Losses and Attorneys' Fees)

26. UBS repeats and realleges the allegations of paragraphs 1 – 25, above, as if fully set forth herein.

27. On information and belief, the Mortgage Loans listed on Exhibit A hereto are in breach of certain representations and warranties set forth in §§ 3.1 and 3.2 of the Purchase Agreement.

28. Pursuant to §§ 3.3(f) and 4.1 of the Purchase Agreement, UBS is entitled to indemnification for its reasonable and necessary attorneys' fees and related costs and expenses arising from County Trust's breach of its contractual obligations as set forth herein.

WHEREFORE, UBS demands judgment in its favor and against County Trust as follows:

(i) on its First Cause of Action, awarding UBS as against County Trust the sum of $2,325,575.73, plus interest at the statutory rate of 9% from the date(s) of breach until the date of judgment;

(ii) on its Second Cause of Action, declaring that County Trust has no defense relating to mitigation of damages so long as Early Payment Default Loans are (a) foreclosed on or sold by the Servicers according to the Servicer Guidelines or (b) sold by UBS in an arms-length transaction in the scratch-and-dent market;

(iii) on its Third Cause of Action, awarding UBS as against County Trust the amount of UBS' attorneys' fees and related costs and expenses

arising from County Trust's breach of its contractual obligations as set forth herein; and

        (iv)    granting such other and further relief as this Court may deem just and proper in the circumstances.

Dated: May 10, 2007

                MILLER & WRUBEL P.C.

                By: _____
                Joel M. Miller (JS-2018)
                Charles R. Jacob III (CJ-4143)
                Jeremy M. Sher (JS-1422)
                250 Park Avenue
                New York, New York 10177
                (212) 336-3500

                Attorneys for Plaintiff
                UBS Real Estate Securities Inc.

# EXHIBIT A

| BORRNAME | UBS Loan ID |
|---|---|
| ZABROSKE, BENJAMIN A. | 777021609 |
| UPEGUI, CARLOS | 777014714 |
| CARRILLO, MARGOT | 777013706 |
| MORRIS, WILBERT | 334582213 |
| GOMEZ, MARTHA | 777015028 |
| GONZALEZ, TOMASA V. | 777017296 |
| GOMEZ, BEATRIZ | 777024533 |
| FARRAY, RALMUNDO | 335338992 |
| SEMAAN, PEDRO | 335338990 |